SMILEY ET AL. *v.* STATE OF INDIANA, EX REL. TRUAX
ET AL.

[No. 8,810. Filed November 18, 1915. Rehearing denied January 25, 1916.]

1. HIGHWAYS.—*Improvement.—Contractor's Bond.—Construction.*—
The bond of a contractor for the improvement of a public highway, given under §7723 Burns 1914, Acts 1905 p. 521, §74, providing that the contractor "shall pay for any labor or material" that shall have been furnished to him or to any subcontractor, etc., is to be construed as a whole and in connection with the contract to

secure the performance of which it was executed, and, thus construed, the bond of a contractor conditioned that he "shall promptly pay all debts incurred by him in the prosecution of said work, including labor, materials furnished", etc., evidenced the intention of the parties to the bond to secure the payment of all labor and material used in the improvement of the road mentioned in the contract. p. 510.

2. HIGHWAYS. — Improvement. — Contractor's Bond. — Liability. — Where a contractor for the improvement of a public highway, on becoming unable to pay his laborers in cash, issued to them orders which they sold and assigned to defendants at a discount, such orders constituted debts of the contractor rendering him liable to defendants on his bond executed pursuant to §7723 Burns 1914, Acts 1905 p. 521, §74, although there would have been no such liability had defendants loaned him the money to pay his laborers, or had assumed to complete the contract for him. p. 511.

3. HIGHWAYS.—Improvement.—Contractor's Bond.—Liability.—Under the bond of a contractor for the improvement of a public highway, executed pursuant to §7723 Burns 1914, Acts 1905 p. 521, §74, a liability exists for fuel furnished to him and used in crushing stone for the highway and for hauling tools to the place of work, since, though such things do not become a physical portion of the completed road as materials do, they in fact become as much a part of the structure as labor performed upon it. p. 512.

4. HIGHWAYS.—Improvement.—Assignment of Labor Claims.—Validity.—County Officers.—Where defendant, who was awarded the contract by the board of county commissioners for the improvement of a highway, in lieu of cash issued to the laborers employed in such work orders which they sold and assigned to a certain firm, the assignment of such claims was not invalid as against public policy from the mere fact that one of the members of such firm was also a member of the board of county commissioners. p. 513.

From Morgan Circuit Court; *Nathan A. Whitaker*, Judge.

Action by the State of Indiana, on the relation of James Truax and another, against Milton T. Smiley and others. From a judgment for relators, the defendants appeal. *Affirmed.*

*Ira C. Batman, Robert G. Miller, James W. Blair, Homer Elliott* and *A. M. Bain,* for appellants.

*Willis Hickam* and *Hubert Hickam,* for appellees.

IBACH, P. J.—The substantial averments of the complaint and the court's special findings show the

facts of this case to be as follows: In the year 1909, upon a proper petition, the board of commissioners of Owen County, Indiana, let a contract for the construction of a free gravel road in Wayne Township in said county to appellant Smiley. He, together with his coappellants as his sureties, executed a bond payable to the State of Indiana, conditioned that Smiley would construct the road according to the plans and specifications therefor and according to the terms and conditions of his contract and "pay all the debts incurred by him in building the road, including labor and material and for boarding laborers." Soon after commencing the work Smiley became financially embarrassed, was unable to pay labor and coal bills, and being unable to borrow he issued time checks or orders to his laborers for work done on the road and they sold them at ten 'per cent discount. James Truax and Lester Truax, relators, partners as Truax & Son, purchased a number of these orders and expected to be paid face value therefor. Since the laborers were required to discount their time orders, they refused to continue the work unless the contractors increased their wages to meet the discount. This was done and the work proceeded. Truax & Son continued to purchase the orders directly from the laborers, and took an assignment to themselves in writing of each order purchased. Truax & Son also sold Smiley coal to the amount of $47.26 for crushing stone used in the construction of the road. After the purchase of the orders and furnishing the coal and before the acceptance of the road by the commissioners, Truax & Son and Smiley ascertained the amount of the orders purchased by them to be $1,152.53, and that such sum was owing to them by Smiley. The accounting was reduced to writing, signed by Smiley, and by agreement, filed

by relators with the county auditor for payment when the road was completed, and was pending for adjustment when the road was accepted. The board found there was due and Smiley was allowed $1,814.11, but Smiley and his sureties objected to the payment of the bill of Truax & Son out of the fund. The court found that there is due Truax & Son $1,143.41 principal, and $184.59 interest from the date of the orders, a total of $1,328. The court also found that from January 1, 1907, to January 1, 1913, appellee James Truax was a member of the board of commissioners of Owen County, and participated in all the acts of the board relative to the pike, which was in his district and under his personal charge. When the work was accepted, there was a shortage in the fund and the relators brought this action against Smiley and his sureties on his bond. On such special finding the trial court stated its conclusions of law in appellee's favor and rendered judgment accordingly.

The errors assigned for reversal present in different ways one main proposition for consideration, Do Truax & Son, upon the facts, come within the terms of the contractor's bond, either by its own terms or the statute under which it was given? The statute under which the bond here involved was given provides that the contractor "shall pay for any labor or material therefor that shall have been furnished to him or to any sub-contractor, agent, or superintendent under him." §7723 Burns 1914, Acts 1905 p. 521, §74. The bond in suit provides that the contractor "shall promptly pay all debts incurred by him in the prosecution of said work, including labor, materials furnished," etc.

In arriving at the true intent of the parties to this bond, we are not warranted in looking to discon-

nected sentences merely; but we are required to consider the bond in its entirety, and consider it in connection with the contract to secure the performance of which the bond was executed. Thus considered, we think it is clear that the true intention of the parties to the bond was to secure the payment of all labor and material used in the building of the pike road mentioned in the contract. This is the only way that a laborer or materialman can be secured in the performance of work of this character. There is no provision for a lien to secure him, and there could be none, so by statute a contractor for building a pike road, when he obtains his contract, is required to give a bond to secure the laborers or materialmen. Consequently the decisions of our courts in applying mechanics' lien statutes and in applying the statutes which give laborers on railroads a preferred claim for labor performed within the last sixty days on the funds in the hands of the receiver have no application to the present case, as in this case no right of lien is given by statute to any one, and the laborer or materialman can only enforce his unpaid claim by suit on the bond, a thing which is not required in the other instances referred to.

It will be observed from the entire record that the parties treated the claims here involved as assigned labor claims, so that we need not consider the effect of the provisions of this particular bond, which are broader than the statute requires. The 2. special findings show that relators had not loaned the money here involved to the contractor to pay his laborers, if such had been the nature of the transaction and the bond included only the statutory conditions we have no doubt but that this bond would not secure the payment of such debt. Neither would the provisions of such bond

inure to the benefit of relators if they, in view of the financial embarrassment of the contractor, had assumed to complete the work and furnished the necessary funds to carry out the terms of the principal contract. The facts before us disclose that certificates were issued to the laborers showing the amount of time they had worked and the amount due each. These were purchased from the laborers directly, and an assignment to relators taken in writing. In such cases it has been held that they remain the debts of the contractor in the hands of the purchaser the same as if they remained in the hands of the laborers. *Lane* v. *State, ex rel.* (1895), 14 Ind. App. 573, 577, 43 N. E. 244; *Hart* v. *State, ex rel.* (1889), 120 Ind. 83, 85, 21 N. E. 654, 24 N. E. 151.

The judgment includes an item for coal furnished to operate the contractor's engine for crushing the stone used on the road, and for hauling tools to the place of work. These we consider the same as material used in the construction of the road. Such things do not become a physical portion of the completed road as materials do, but they do in fact become as much a part of the structure as the labor performed upon it. This branch of the case has been very fully and ably discussed in the following cases. *Gilbert Hunt Co.* v. *Parry* (1910), 59 Wash. 646, 110 Pac. 541, Ann. Cas. 1912 B 225; *Hall* v. *Cowen* (1908), 51 Wash. 295, 98 Pac. 670; *City Trust, etc., Co.* v. *United States* (1906), 147 Fed. 155, 77 C. C. A. 397; *National Surety Co.* v. *Bratnober Lumber Co.* (1912), 67 Wash. 601, 122 Pac. 337.

The next question presented is, Was the assignment of the laborer's time orders to the firm of Truax & Son void as against public policy, because of the fact that James Truax, one of the

members of such firm, was a member of the
4. board of commissioners? The law is positive
on the subject, that a public officer cannot deal
with himself, or become interested in any contract in
any manner that might influence his official con-
duct adversely to the interests of the public. In this
case the evidence shows and the court finds that
the firm of Truax & Son had nothing whatever to do
with Smiley, the contractor, or with his contract.
They did not furnish him any money to carry on his
contract, and we fail to see how the purchase of
some of the laborer's time checks could in any way
influence the conduct of one of the firm who was the
commissioner. He was in no manner dealing with
himself with reference to any business in which the
county was interested, neither did he thereby be-
come interested in any contract in which the coun-
ty was a party. Smiley had obtained the contract
for building the road and had given a good bond to
pay all the labor and material claims, and there
was no way to collect the labor and material claims
except by a suit on the bond, so that we fail to see
what difference it would make to the county or the
holders of any such claims whether the contractor
made or lost money on the contract. The interests
of the county and of the commissioner were not an-
tagonistic, and the county was at no time interested
in or connected with any controversy between
Truax & Son and the contractor and Truax &
Son at no time were interested in the contract with
the county, or the proceeds of such contract. The
road was reported completed by the superinten-
dent and engineer, and accepted by the board of com-
missioners, who allowed Smiley the unpaid balance
of his contract price, which was $1,814.11. It was
then also ascertained that the amount of debts con-

tracted by Smiley exceeded the amount of his final allowance by almost $300, and then it seems Smiley and his bondsmen objected to the payment of the claims of the relators. Under these facts it seems that there was no time during the entire transaction between relators and Smiley, either when the time of the laborers was purchased, and the several assignments were taken thereof, or while seeking to collect them, when the rights of the public were affected on account of the fact that one member of the firm was county commissioner, and therefore we believe the law of public policy has no application.

We find no error in the record, and are convinced therefrom that a correct result was reached. Judgment affirmed.

NOTE.—Reported in 110 N. E. 222. On the nature of labor or materials which will support an action on a contractor's bond, see 43 L. R. A. (N. S.) 162; L. R. A. 1915 F 951. As to the right of one furnishing labor or material to sue on a bond given by the contractor to the owner, see Ann. Cas. 1916 A 754. As to the validity of a contract made by a public officer with himself, see Ann. Cas. 1912 A 867; Ann. Cas. 1916 A 237. See, also, under (1) 5 Cyc 754, 757; (2) 37 Cyc 235; 37 Cyc Ann. 235; (4) 29 Cyc 1435.