385 So.2d 1163 (1980)
TRUSTEES, FLORIDA WEST COAST TROWEL TRADES PENSION FUND; Trustees, Florida West Coast Trowel Trades Welfare Fund; Trustees, Florida West Coast Trowel Trades Apprenticeship Fund; and, International Union of Bricklayers and Allied Craftsmen, Local No. 3, Afl-Cio, Appellants,
v.
QUALITY CONCRETE COMPANY, INC., and Safeco Insurance Company of America, Appellees.
No. 79-2131.
District Court of Appeal of Florida, Second District.
July 11, 1980.
*1164 John F. Venable of W. Eric Venable, Tampa, for appellants.
Stephen H. Reisman of Rosenberg, Rosenberg, Reisman & Glass, Miami, for appellee Safeco Ins. Co. of America.
BOARDMAN, Judge.
The issue on this appeal is whether the issuer of a performance bond on a public works contract may be held liable under the bond for contractually required contributions to the union pension funds of the laborers employed by a subcontractor on the project. The trial court answered this question in the negative and therefore dismissed with prejudice the complaint of appellants, the trustees of certain union pension funds, as to defendant/appellee Safeco Insurance Company. We disagree and reverse.
Bricklayers, Masons, and Plasterers International Union of America, Local # 3 (the Union), entered into a collective bargaining agreement with Quality Concrete, Inc. (Quality). The collective bargaining agreement required that each employer pay to appellants certain union benefits, in addition to paying the employees' wages.
Titan Southeast Construction Corp. (Titan) entered into a public works contract with the city of Tampa for the construction of a sewage treatment plant and purchased performance bonds from appellee on January 19, 1976, and March 14, 1977. The bonds in question all provided in pertinent part:
Now, if the Principal shall in all respects well and faithfully perform and execute the Contract and the work therein provided, ... and promptly pay all debts incurred by the Principal or any subcontractor in the prosecution of such work, including those for labor and materials furnished, ... then is this obligation to be null and void, otherwise to remain in full force and effect.
Appellants filed an amended complaint and a second amended complaint against Quality and appellee. The second amended complaint alleged that Quality had failed to pay appellants the contributions due for the hours worked by employees covered by the collective bargaining agreement. It further alleged that one or all of the aforementioned surety bonds were issued with respect to payment for labor performed by Union members for Quality as a subcontractor to Titan and that appellee was therefore liable to appellants under its surety bond for the sum owed by Quality.
Appellee filed a motion to dismiss appellants' second amended complaint on the *1165 grounds that the performance bonds in question were executed pursuant to Section 255.05, Florida Statutes (1975), and that (1) appellants were not claimants as defined by Section 255.05 because they did not claim to be in direct privity with Titan and were not a subcontractor to Quality, and (2) there was no Florida authority permitting recovery of union benefits against a Section 255.05 bond. The trial court granted appellee's motion and dismissed the complaint with prejudice as to appellee on the authority of William H. Gulsby, Inc. v. Miller Construction Co., Inc. of Leesburg, 351 So.2d 396 (Fla. 2d DCA 1977), and J.W. Bateson Co., Inc. v. United States ex rel. Board of Trustees of the National Automatic Sprinkler Industry Pension Fund, 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978). This appeal followed timely.
Section 255.05 requires that a contractor on a public works construction job provide a bond for the protection of certain persons supplying labor or materials to that job. Although no Florida court has expressly recognized that trustees of fringe benefit funds may assert a claim for delinquent contributions against a Section 255.05 bond, we conclude that such a claim is proper.
The question presented here is precisely that addressed in Local Union 323, International Brotherhood of Electrical Workers v. Electric Utilities Construction Co., 73 L.C. 53, 318 (S.D.Fla. 1974). In that case the union entered into a collective bargaining agreement with the Electric Utilities Construction Corp. (EUCC) which provided that EUCC must pay to the trustees of various fringe benefit funds an amount based on the number of hours worked by covered employees. EUCC entered into a public works contract with the city of Vero Beach. Pursuant to the requirements of Section 255.05, EUCC purchased a payment and performance bond from United States Fidelity and Guarantee Co. (USF&G). The bond by its terms extended to protect persons supplying labor to EUCC in the construction of the public works project. The union and trustees sought to recover from EUCC and from USF&G as surety on the bond delinquent fringe benefit contributions. USF&G moved to dismiss the action for failure to state a cause of action, arguing that the bond did not extend to cover EUCC's obligation to contribute to the fringe benefit funds imposed by the collective bargaining agreement. The district court denied the motion, relying on United States ex rel. Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). The court noted that Florida courts have stated that Section 255.05 was patterned after the Miller Act, 40 U.S.C. § 270 (a) et seq., and that where there are no Florida decisions interpreting Section 255.05, a court should look for guidance to decisions interpreting the Miller Act. Board of Public Instruction v. Rood Construction Co., 166 So.2d 701 (Fla. 3d DCA 1964).
In Sherman, Carter, the prime contractor, entered into a contract with the United States to construct certain military installations. Pursuant to that contract, Carter provided a payment and performance bond executed by Hartford Accident and Indemnity Co., as required by the Miller Act. Carter had previously entered into a collective bargaining agreement with numerous local unions which required that he make contributions to various fringe benefit funds. Carter failed to make these contributions, and the trustees of those funds brought an action on the bond. The court noted that the contributions to the funds were part of the compensation for the work performed by the employees and thus the employees were not fully paid until those contributions were made. The court rejected the surety's argument that the action was improper because the obligation to make the contributions arose out of an agreement with the union and not out of the agreement with the United States. The surety also argued that the trustees were not proper claimants under the Miller Act bond because they did not furnish labor or materials. The court rejected this argument on the ground that, for Miller Act purposes, the contributions were the equivalent of wages due the employees who furnished the labor and that the trustees stood in the shoes of the employees.
*1166 The bonds furnished by appellee do not expressly prohibit trustees of collectively bargained fringe benefit funds from bringing an action on the bond. Rather the bond provides:
This bond is made for the use and benefit of all persons, firms, and corporations who may furnish any material, or perform any labor for or on account of the work, building or improvement, and they and each of them are hereby made obligees hereunder, in the same manner as if their own proper names were written herein, as such, and they and each of them may sue hereon, all in accordance with the provisions of Section 255.05 Florida Statutes and any amendments thereto, approved, the provisions of that act being hereby made a part of this bond as though fully set forth herein.
The purpose of Section 255.05 is to protect laborers and materialmen on public works projects. City of Fort Lauderdale v. Hardrives Co., 167 So.2d 339 (Fla. 2d DCA 1964). To hold that trustees of collectively bargained fringe benefit funds cannot recover unpaid contributions from a surety on a Section 255.05 bond would be to render unprotected a large portion of the laborers' compensation package.
One who supplies labor or materials to a subcontractor is within the class of those required to be protected by a Section 255.05 bond. Hardrives, supra. Section 255.05 requires that one who enters into a contract with a city of the state of Florida for construction, repair, or completion of any public building must execute a penal bond and that, in addition to the usual protection, the bond must be conditioned on the additional following obligations: "that such contractor shall promptly make payments to all persons supplying him labor, material, and supplies, used directly or indirectly by the said contractor or subcontractors in the prosecution of the work provided for in said contract... ." (Emphasis added.) Appellants alleged in their second amended complaint that Quality contracted with Titan, the prime contractor. Thus, Quality was a subcontractor, and, therefore, a supplier of labor to Quality must be protected by a Section 255.05 bond.
As noted in Sherman, when trustees bring an action against a bond such as Section 255.05, the unpaid contributions are considered the equivalent of wages due the employees. In such an action the trustees stand in the shoes of the employees. As suppliers of labor to a subcontractor, appellees are within the class of persons required to be protected by a public works performance bond.
Bateson, supra, and Gulsby, supra, upon which the trial court relied, are not on point. Bateson is distinguishable because there the unpaid contributions were required to be made by a sub-subcontractor. The court stated:
Congress understood the difference between "sub-subcontractors" like Colquitt and "subcontractors" like Pierce, and ... it intended the scope of protection of a payment bond to extend no further than to sub-subcontractors. [Citation omitted.] There is nothing to the contrary anywhere in the legislative history. Thus, while Colquitt could have claimed against the payment bond had Pierce defaulted in its obligations, the employees of Colquitt were not similarly protected against Colquitt's default, because they did not have a contractual relationship with Pierce or any other "subcontractor." (Footnote omitted; emphasis added.)
434 U.S. at 591-592, 98 S.Ct. at 876, 55 L.Ed.2d at 56. And Gulsby involved a sub-sub-sub-subcontractor.
Accordingly, the trial court's order dismissing appellants' complaint as to appellee Safeco is REVERSED and the cause REMANDED for further proceedings consistent with this opinion.
HOBSON, Acting C.J., and DANAHY, J., concur.