640 P.2d 209

ARIZONA LABORERS, TEAMSTERS AND CEMENT MASONS LOCAL 395 HEALTH AND WELFARE TRUST FUND, a Trust; Arizona Laborers, Teamsters and Cement Masons Local 395 Pension Trust Fund, a Trust; Laborers and Cement Masons Local 395 Savings Fund, a Trust; and Laborers Joint Training Fund, a Trust, Plaintiffs/Appellees,

v.

NEW PUEBLO CONSTRUCTORS, INC., and the Travelers Indemnity Company, Defendants/Appellants.

No. 2 CA–CIV 4063.

Court of Appeals of Arizona, Division 2.

Jan. 19, 1982.

Ward & Keenan, Ltd. by David L. Niederdeppe, Phoenix, for plaintiffs/appellees.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P. C. by D. Michael Mandig and Earl F. Daniels III, Tucson, for defendants/appellants.

OPINION

HATHAWAY, Judge.

This is an appeal from a summary judgment in favor of the plaintiff trust funds on their claim to a general contractor's payment bond, pursuant to A.R.S. § 34–223.

Defendant New Pueblo Constructors contracted with the Arizona Department of Transportation to work on the Tucson-Nogales highway. According to statute, it obtained a bond from defendant Travelers Indemnity Company. New Pueblo subcontracted work on this project to Highway Safety Products, Inc. Highway Safety is a signatory to the Master Labor Agreement covering construction workers in Arizona. According to this agreement, Highway

---

Safety is required to contribute to the plaintiff trust funds, which provide pension, health and vacation benefits to their members. It is undisputed that Highway Safety failed to make the required contributions.[1] The trust funds secured a summary judgment against the general contractor, New Pueblo, and its surety, Travelers. The defendants appealed.

A.R.S. § 34–222 requires the general contractor on a public job to post a payment bond to ensure that all claims against the project are covered. According to A.R.S. § 34–223, a supplier of labor or materials to a subcontractor may sue on the general contractor's bond, even though there may be no contract between the supplier and the general contractor. Notice of the claim, however, must be sent to the general contractor within 90 days of the last delivery of materials or labor to the subcontractor. This statute is taken from the federal Miller Act, 40 U.S.C. §§ 270a–270d, and is thus called the "Little Miller Act."

■ The right asserted in this case—to collect against the prime contractor's bond because of a subcontractor's failure to make fund contributions—was established in *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). Appellants admit that *Sherman* controls, but contend that only a portion of the claim is timely.

Twelve workers were finished by the end of October 1978. A thirteenth, R. Villa, worked through January 1979. The trust funds gave notice to the general contractor on April 11, 1979. If the laborers were claiming against the bond individually, only R. Villa's claim would not be time barred. Appellants therefore admit liability on the part of the claim attributable to R. Villa but deny the rest.

In this case of first impression, the parties ask us to choose between competing interests. According to the appellee trust funds, the purpose of the Little Miller Act is remedial, to ensure that laborers and materialmen are paid. *Western Asbestos Co. v. T. G. K. Construction Co., Inc.*, 121 Ariz. 388, 590 P.2d 927 (1979). They note that the individual workers have no way of knowing whether these contributions have been made and that the workers must claim their benefits from the fund rather than from the employer. The funds are charged with the responsibility of collecting the payments from the employers. The funds are rarely in a position to act directly to protect individual employees and usually do not get the information necessary to make these claims until a project is finished. Nevertheless, the funds must distribute benefits to qualified employees whether or not their employers have made the contributions.

Appellants argue that, while the statute generally is intended to protect the supplier of labor or materials, the notice provision is in fact for the benefit of the general contractor.

"It was assumed that such third parties [the suppliers] will first endeavor to collect from the subcontractor with whom they have a contract relation. During a reasonable period, while these efforts are going forward, the contractor withholds the payments due the subcontractor. If he receives a third party claim within ninety days, he reserves appropriate amounts from monies otherwise owing to the subcontractor. But, once ninety days have elapsed without such notice, he is free to pay the subcontractor for the latter's work without risk of liability under his bond to laborers and materialmen whose sole contractual relation is with the subcontractor. A statute which gave rights on the contractor's bond to laborers and materialmen having no contractual relations with him but which did not require timely and adequate notice to him, would lead either to double payments or to interminable delay in settlements between contractors and subcontractors...." *United States ex rel. J. A. Edwards & Co. v. Thompson Construction*

[1.] The contributions are pegged to the hourly wage earned by each laborer. For example, Highway Safety should have contributed 95 cents to the pension trust fund for each man-hour worked during the period June 1978-May 1979.

*Corp.*, 273 F.2d 873, 875–76 (2nd Cir. 1959).

We are persuaded to adopt the rule proposed by the trust funds and hold, therefore, that trust funds may give notice to a general contractor under A.R.S. § 34–223 within 90 days after the last employee has performed labor for the subcontractor.

We believe this rule will advance both policies of the statute. First, it will protect the workers and their benefit funds because there is no practical alternative method to police the subcontractor's contributions to the funds. Second, it will not expose the general contractor to double liability or delay in settling with its subcontractors, since the general contractor can easily withhold an amount to cover this sort of claim for 90 days after the subcontractor has completed performance or walked off the job. Indeed, this is the usual practice. If there are no third-party claims within 90 days of the subcontractor's completion of the project, the contractor can pay off the subcontractor and be free of any Little Miller Act liability.

Affirmed.

HOWARD, C. J., and BIRDSALL, J., concur.