**INDIANA CARPENTERS CENTRAL AND WESTERN INDIANA PENSION FUND, Appellant–Plaintiff,**

v.

**SEABOARD SURETY COMPANY, Appellee–Defendant.**

**No. 49A02–9111–CV–510.**

Court of Appeals of Indiana, Second District.

Oct. 19, 1992.

Karl L. Mulvaney, Thomas C. Scherer, Nana Quay–Smith, and Gerard L. Gregerson, Bingham Summers Welsh & Spilman, Indianapolis, for appellant-plaintiff.

Theodore J. Nowacki and V. Samuel Laurin, III, Bose McKinney & Evans, Indianapolis, for appellee-defendant.

SHIELDS, Judge.

Indiana Carpenters Central and Western Pension Fund (Carpenters) appeals the trial court's dismissal of its complaint pursuant to Ind.Trial Rule 12(B)(6).

We reverse and remand for further proceedings.

### ISSUES

1. Whether a pension and benefit plan has standing to file a claim against a statutorily-required payment bond for unpaid fringe benefits owed to the plan's members for work performed on a public works project.

2. Whether a pension and benefit plan has stated a claim upon which relief can be granted when its complaint fails to allege compliance with the notice provisions of IC 36–1–12–13.1(d) and (e) (1988).

### FACTS

The City of Indianapolis (City) contracted with BMW Constructor, Inc. (BMW) to construct an odor control system at the Belmont and Southport Advanced Wastewater Treatment Plants (Construction Contract). BMW obtained a payment bond (Bond) from Seaboard Surety Company (Seaboard) pursuant to IC 36–1–12–13.1. BMW subcontracted with J. Chris Construction, a/k/a J. Chris Corporation (Chris), to perform work related to the Construction Contract. A collective bargaining agreement between Chris and its employees union obligated Chris to pay fringe benefits to Car-

penters as a portion of the employees' wages.

Carpenters is an employee welfare benefit plan which receives contributions from employers on behalf of employee-members. Carpenters filed an action against Seaboard's bond to recover fringe benefit contributions that Chris failed to pay from September 1988 through November 1988. Seaboard moved to dismiss Carpenters' claim pursuant to T.R. 12(B)(6). The trial court sustained Seaboard's motion and entered a final judgment as provided in Ind.Trial Rule 54(B), finding that Carpenters was not within the class of persons entitled to recover on the Bond and that it did not plead compliance with all conditions precedent.

Carpenters appeals.

## DISCUSSION

■ The purpose of a T.R. 12(B)(6) motion is to test the legal sufficiency of the claim, not the facts that support it. *Bowman v. Bowman* (1991), Ind.App., 567 N.E.2d 828, 830. We review a dismissal to determine whether the complaint states any allegations upon which the trial court could have granted relief. *Id.* A complaint need not state all elements of a cause of action. *Rasp v. Hidden Valley Lake, Inc.* (1986), Ind.App., 487 N.E.2d 1338. Rather, the facts alleged in the complaint are taken as true, and dismissal is appropriate only where it appears the plaintiff could not be granted any relief. *Thiele v. Indiana Dept. of Highways* (1985), Ind. App., 472 N.E.2d 1274, 1275.

**1.** 40 U.S.C. § 270a et seq. (1935).

**2.** The Court found that even though contributions to the benefit fund were not wages, the Act did not limit recovery on the statutory bond to wages. The contributions, agreed to by the contractor under the terms of the employment agreement, were part of the compensation for the work done by the employees and those employees would not be "paid in full" until such contributions were made. *Carter*, 353 U.S. at 217–18, 77 S.Ct. at 797–98.

**3.** Other states have interpreted their state public works statutes using the principles enunciated in *Carter*. *See Trustees, Florida West Coast*

## I.

■ Carpenters argues the trial court erred when it dismissed Carpenters' claim because Carpenters lacked standing. We agree and hold that, under the facts before us, Carpenters is within the class of person covered by the Bond.

This question came before the United States Supreme Court in *United States v. Carter* (1957), 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776. In *Carter*, the trustees of a health and welfare fund sued a surety company on the contractor's payment bond required by the Miller Act (Act).[1] The contractor was obligated by a collective bargaining agreement to pay the laborers' wages plus a small hourly rate to the trustees of an employment benefit fund. *Id.* at 213, 77 S.Ct. at 795. However, payment to the benefit fund was not deemed wages under the terms of the employment contract.[2] *Id.* at 214, 77 S.Ct. at 795. When the contractor failed to make payments to the fund, the trustee sued the surety on the bond to recover the balance due the fund. *Id.* at 215, 77 S.Ct. at 796. The Court of Appeals held that the trustees could not sue on the bond because they were not the persons who had furnished labor or material, nor were they seeking sums "justly due" such persons. *United States v. Carter* (9th Cir.1956), 229 F.2d 645. The Supreme Court reversed the Court of Appeals and held the trustees of the benefit fund had standing to sue the surety for the omitted contributions. *Carter*, 353 U.S. at 220, 77 S.Ct. at 798.

We find the court's reasoning and interpretation of the Act persuasive and applicable to the issue before us.[3]

*Trowel Trades Pension Fund v. Quality Concrete Company, Inc.* (1980), Fla.Dist.Ct.App., 385 So.2d 1163; *Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. New Pueblo Constructors, Inc.* (1982), Ariz.App., 131 Ariz. 278, 640 P.2d 209; *Dobbs v. Knudson, Inc.* (1980), Iowa, 292 N.W.2d 692; *Trustees of the Colorado Carpenters & Millwrights Health Benefit Trust Fund v. Pinkard Construction Co.* (1980), 199 Colo. 35, 604 P.2d 683; *Reliance Ins. Co. v. Commonwealth of Kentucky, Dept. of Transportation* (1978), Ky.Ct. App., 576 S.W.2d 231; *Crabtree v. Lewis* (1975), 86 Wash.2d 282, 544 P.2d 10; *Bernard v. Indemnity Ins. Co. of North America* (1958), 162 Cal.

First, the court in *Carter* examined the purpose of the Act which required payment bonds on public works projects where traditional payment mechanisms for laborers, such as mechanic's liens, are not allowed. The *Carter* court found that the Act represented a congressional effort to protect laborers and materialmen for the construction of federal buildings and that "[t]he essence of its policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material." *Id.* at 217, 77 S.Ct. at 797.

Similarly, in Indiana, statutory provisions require payment bonds on public works projects to secure payment for subcontractors, labor, materialmen and those performing any service because mechanic's liens are not available to those who work on public works projects. *See MacDonald v. Calumet Supply Co.* (1939), 215 Ind. 536, 19 N.E.2d 567, 21 N.E.2d 400; *Townsend v. Cleveland Fire-Proofing Co.* (1897), 18 Ind.App. 568, 571–72, 47 N.E. 707, 708. Thus, both federal and state law require bonds to protect the otherwise unprotected materialmen and laborers on public projects.

Second, the court in *Carter* discussed the intended beneficiaries of the Act. Under the federal law, the intended beneficiaries are the laborers and materialmen owed compensation from their employment on public works projects. *See* 40 U.S.C. § 270b(a). Thus, "[a]s long as [the contractor's] obligations relating to compensation for labor have not been satisfied, his employees will not have been paid in full, and the Miller Act will not have served it purpose." *Carter*, 353 U.S. at 218, 77 S.Ct. at 797.

Under the Indiana statute, the beneficiaries are the same. The bond secures "the payment of all indebtedness to a person for labor and service performed ... [and t]he payment bond must state that it is for the benefit of the subcontractors, laborers, ma-

terial suppliers and those performing services." IC 36–1–12–13.1(b).

Third, the court in *Carter* looked at the relationship between the trustees of the benefit fund and its employee-members.

Assignees of the claims of persons furnishing labor or material come within the protection of the statutory bond.... If the assignee of an employee can sue on the bond, the trustee of the employees' fund should be able to do so.... The trust agreement gives the trustee the exclusive right to enforce payment. The trustees stand in the shoes of the employees and are entitled to enforce their rights.

Moreover, the trustees of the fund have an even better right to sue on the bond than does the usual assignee since they are not seeking to recover on their own account. The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor.

353 U.S. at 219–20, 77 S.Ct. at 798.

In Indiana, assignees of employees have the right to recover under a payment bond. *Smiley v. State* (1916), 60 Ind.App. 507, 110 N.E. 222. Chris's employees meet the definition of claimants under the Bond because they had a direct contract (collective bargaining agreement) with a subcontractor (Chris) of the contractor (BMW) to furnish labor. *See* Record at 17 (¶ 15.1 of the Bond). The collective bargaining agreement obligated Chris to pay Carpenters benefits to be retained in a pension fund as a portion of its employees' wages for work performed by those employees. Following the logic of *Carter*, Carpenters should be able to recover under the Bond because it stands in a trustee relationship with Chris's employees and seeks recovery for the sole benefit of the employees, who performed the labor and for whose benefit the Bond was given. *See also Kennedy v. Connecticut General Life Ins. Co.* (1991), 7th Cir., 924 F.2d 698, 700 (Assignees stand in the

App.2d 479, 329 P.2d 57; *Martin v. William Casey & Sons, Inc.* (1958), 5 A.D.2d 185, 170 N.Y.S.2d 228. *See also* 48 Am.Jur.2d *Labor &*

*Labor Relations* §§ 329–30 (1979); 51 C.J.S. *Labor Relations* § 122 (1967).

shoes of the beneficiaries. A provider of medical services could sue a group health insurer for nonpayment of claims as an assignee of the plan participants.).

Finally, *Carter* notes the lack of equity that would result if the trustees were denied standing to sue on the bond: "[D]enial of an assignee's right to sue on the bond might deprive those for whom the security was intended of a fair chance to realize upon their claims by assignment." 353 U.S. at 219, 77 S.Ct. at 798. The same would be true in the present case. To hold that trustees of a collectively-bargained benefit plan cannot recover unpaid contributions from a surety on an IC 36–1–12–13.1 bond would leave unprotected a large portion of an employee's compensation package. Individual workers are not likely to know if their fringe benefits have been paid by their employer; neither are the benefit funds who are usually charged with the responsibility of collecting the payment from the employers—these funds usually do not get information about contributions until a project is completed. *Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. New Pueblo Constructors, Inc.* (1982), Ariz.App., 131 Ariz. 278, 640 P.2d 209, 210. Permitting Carpenters to recover against the Bond protects the employees and Carpenters, and is the only practical alternative method of enforcing a subcontractor's contributions to benefit funds.

Seaboard further argues that Carpenters could not assert a valid claim against the Bond unless, had the construction project been a private project, it would have been entitled to assert a mechanic's lien pursuant to IC 32–8–3–1 (1988). Seaboard cites *Edwards v. Bethlehem Steel Corp.* (1988), Ind.App., 517 N.E.2d 430, which held that a union pension fund did not have standing to file a mechanic's lien in Indiana because pension funds do not provide labor or materials. *Id.* at 432. Seaboard asks us to extend the holding in *Edwards* and construe the parties who may recover under the IC 36–1–12–13.1 bond as narrowly as we construe mechanic's liens. However,

*Edwards* need not be construed so broadly; a mechanic's lien provides relief to laborers which is in direct conflict with the rights of a landowner, while the public work statutes provide a remedy against a surety which has been compensated for assuming that risk.

## II.

■ Carpenters contends it was not required to plead compliance with the notice provisions found in IC 36–1–12–13.1(d) (1988). Therefore, according to Carpenters, the trial court erred in dismissing its claim on the ground that Carpenters failed to comply with those provisions. The particular provisions in question read:

(d) A person to whom money is due for labor performed, material furnished, or services provided shall, within sixty (60) days after the completion of the labor or service, or within sixty (60) days after the last item of material has been furnished, file with the board signed duplicate statements of the amount due. The board shall forward to the surety to the payment bond one (1) of the signed duplicate statements. However, failure of the board to forward a signed duplicate statement does not affect the rights of a person to whom money is due. In addition, a failure to forward the statement does not operate as a defense for the surety.

(e) An action may not be brought against the surety until thirty [30] days after the filing of the signed duplicate statements with the board. If the indebtedness is not paid in full at the end of that thirty [30] day period the person may bring an action in court. The court action must be brought within sixty [60] days after the date of the final completion and acceptance of the public work.

IC 36–1–12–13.1(d) and (e).

Seaboard argues the statutory notice is a condition precedent to maintaining a judicial action and the trial court correctly dismissed the action because Carpenters failed to notify the board[4] prior to its action against Seaboard.

---

4. IC 36–1–12–1.2 (1988) states: "As used in this

chapter 'board' means the board or officer of a

■ Statutory notice is a procedural precedent which must be performed prior to commencing an action but which need not be pled under our notice pleading, i.e., it is not an element of plaintiff's claim. *See Thompson v. City of Aurora* (1975), 263 Ind. 187, 325 N.E.2d 839 (statutory notice under the Tort Claims Act is a "procedural precedent which must be performed prior to commencement of the suit" but which need not be plead under "new rules of procedure." *Id.* at 194, 325 N.E.2d at 843. Rather, failure to comply with the statutory notice requirement is a defense cognizable under T.R. 12(B) [5], which must be asserted in a responsive pleading to the complaint. *Id.* at 194, 325 N.E.2d at 843. Once placed in issue, the plaintiff bore the burden of proving compliance with the statute. *Id.* Further,

> [t]he question of compliance with the statute is not a question of fact for the [fact finder]. It is a procedural precedent which need not be pleaded but may be raised as a defense in a responsive pleading. If so raised the plaintiff then has the burden of proving compliance. The trial court must make the determination of whether proper notice was given and must do so prior to trial.

*City of Indianapolis v. Satz* (1978), 268 Ind. 581, 584, 377 N.E.2d 623, 625.

However, a T.R. 12(B)(6) motion to dismiss for failure to state a claim, the vehicle used by Seaboard, is not the appropriate vehicle to present the issue to the court for the determination. That motion is limited to the face of the complaint and cannot reach the sufficiency of the plaintiff's proof on an issue which plaintiff need not allege. Therefore, the trial court erred in dismissing Carpenters' claim for failing to state a claim because the alleged deficiency, the claim's failure to allege compliance with a procedural precedent, need not be alleged. The complaint is not facially deficient for failing to contain such an allegation.

However, we proceed to address an issue which the parties address and which will arise upon remand—the nature of this procedural precedent and, in particular, when the sixty (60) days in which the duplicate statements must be filed with the public works board begins to run.

IC 36–1–12–13.1(d) is part of a statutory scheme which provides for the payment of contractors, laborers, material suppliers, and those who perform services for public work projects. *See Concrete Steel Co. v. Metropolitan Casualty Ins. Co.* (1930), 95 Ind.App. 649, 653, 173 N.E. 651, 652. The scheme fulfills the purpose of securing payment for subcontractors, laborers, materialmen and service providers in relation to or in connection with public works construction. *MacDonald*, 215 Ind. at 543, 19 N.E.2d at 570. This relief is mandated by statute because mechanics liens are not available to a claimant who works on public works projects. *Townsend*, 18 Ind.App. at 571, 47 N.E. at 708. These statutes do not have as their purpose the narrowing of a claimant's rights; rather they expand the rights of claimants who would be left without the ability to recovery for the materials, labors, or services if general contractors and public entities were unable to make payment.

Generally, the public works board is required to withhold sufficient monies from the contractor to pay subcontractors, laborers, material suppliers, and those performing services.[6] Accordingly, the board is required to withhold the contractor's final payment until the contractor has paid these several persons. A subcontractor, laborer, material supplier, or service provider obtains payment by filing a *claim* with the

political subdivision or agency having the power to award contracts for public works."

5. "Every defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required." T.R. 12(B).

6. The contract between the public works board and the contractor must "contain a provision for the payment of subcontractors, laborers, material suppliers, and those performing services. The board shall withhold money from the contract price in a sufficient amount to pay the subcontractors, laborers, material suppliers, and those furnishing services." IC 36–1–12–13 (1988).

public works board "within sixty (60) days after the last labor performed, last material furnished, or last service rendered *by them.*" IC 36–1–12–12(b) (emphasis added).

If there is no dispute between interested parties, the *claimant* shall be paid by the board from the money due to the contractor and the amount paid is deducted from the contract price. However, if there is a dispute, payment is not made and the "board shall retain sufficient money to pay the claims until the dispute is settled and the correct amount is determined." IC 36–1–12–12(d). Also, even if there is not a dispute, "if there is not a sufficient sum owed to the contractor to pay [claims filed by subcontractors, material suppliers, laborers, or service providers], the sum owed to the contractor shall be prorated in payment of the bills among the parties entitled." IC 36–1–12–12(a).

Of course, whether there are sufficient contract funds to pay these various claims may not be known until all the claims are filed, including the claim filed by the last person to perform labor, furnish material, or perform a service on the public works project. As explained later, the legislature was cognizant of this delay when it enacted an alternative statutory protection for the unpaid sub-contractor, laborer, material supplier or service provider on a public works project. In public works contracts where the cost of the public work is expected to exceed seventy-five thousand dollars ($75,000), the contractor is required to execute a payment bond, in the amount of the contract price, for "the payment of all indebtedness to a person for labor and service performed, material furnished, or services rendered. The payment bond must state that it is for the benefit of the subcontractors, laborers, material suppliers, and those performing services." IC 36–1–12–13.1(a).

IC 36–1–12–13.1 further provides that any unpaid subcontractor, laborer, material supplier, or service provider, who wishes to proceed under this alternative statutory remedy shall file with the board signed *duplicate statements* of the amount due "within sixty (60) days after the completion of the labor or service, or within sixty (60) days after the last item of material has been furnished...."

Assuming payment in full is not forthcoming within an additional thirty (30) days of the date the duplicate statements are filed with the public works board, the unpaid person may initiate an action in court against the surety. However, in all events, the "court action must be brought within sixty (60) days after the date of the final completion and acceptance of the public work."[7] IC 36–1–12–13.1(e).

The pertinent question is when does the sixty (60) day period commence within which the duplicate statements must be filed with the public works board. The time commences from that date when the *last* material is provided. or the *last* labor or service is performed by any subcontractor, laborer, service provider, or materialman, on the public works project. This time frame is the only one that provides the protection intended by the legislative scheme. As explained earlier, a subcontractor, material provider, laborer, or service performer will not necessarily know within sixty (60) days of the date of their last labor or services or material whether their claim will be paid. Therefore, the sixty (60) day period for filing duplicate statements of an amount due, in order to seek payment from the surety, must commence at a later time than the commencement of the sixty (60) day period within which a claim for payment commences. This conclusion is reinforced by the distinction in language between IC 36–1–12–12(b) and IC 36–1–12–13.1(d); the former refers

---

7. This latter date is significant only in the rare situation where the public work is completed and accepted within thirty (30) days of the date that the last labor or service is performed or the last material provided. In that rare situation, the duplicate statements of the amount due would have to be filed in less than sixty (60) days after the labor or service is performed or the material provided in order to initiate the action within the sixty (60) day limit and yet fulfill the mandatory thirty (30) day waiting period between the filing of the statements and commencing the action.

to *claims* which must be filed within sixty (60) days of the date that the *claimant* last performed any labor, furnished material, or provided service, while the latter refers to duplicate statements which shall be filed with the board *"within sixty (60) days after the completion of the labor or service, or within sixty (60) days after the last item of material has been furnished."* [8] (emphasis added).

In summary, if a subcontractor, material provider, service performer, or laborer desires *payment from the board,* out of funds retained by the board, the subcontractor, material provider, service performer, or laborer must file a claim with the public works board within sixty (60) days of the date *that entity* last performed labor, furnished material, or rendered service. If payment is not made, or is not made in full, the subcontractor, material provider, service performer, or laborer has until sixty (60) days after the last labor or service is performed, or the last item of material furnished by any subcontractor, material provider, service performer, or laborer, to seek *payment from the surety* by filing duplicate statements of the amount due with the public works board, and then must wait thirty (30) days before initiating an action against the surety.[9]

The trial court erred in sustaining Seaboard's T.R. 12(B)(6) motion. Accordingly, the order dismissing the second count of Carpenters' complaint is reversed and the cause remanded for further proceedings.

SULLIVAN, J., concurs.

CHEZEM, J., concurs in result.

---

**8.** This distinction is emphasized by the phrase *by them* which appears in IC 36–1–12–12(b) and does not appear in IC 36–1–12–13.1(d).

**9.** Of course, the action against the surety must be filed within sixty (60) days of the date that the public works projects is finally completed and accepted. Therefore, it is conceivable that an unpaid subcontractor, laborer, materialman, or service provided would have to file its duplicate statements in less than sixty (60) days from the date labor or service is last performed or material is last provided, in order to initiate a timely action.