831 N.E.2d 1242 (2005)
In the Matter of the Involuntary Termination of the Parent-Child Relationship of T.W., Minor Child, and His Mother, Joanne Fisher and His Alleged Father Robert Williams,
Joanne Fisher, Appellant-Respondent,
v.
Marion County Office of Family and Children, Appellee-Petitioner, and
Child Advocates, Inc. Co-Appellee (Guardian ad Litem).
No. 49A02-0501-JV-19.
Court of Appeals of Indiana.
August 3, 2005.
*1243 Jan Berg, Indianapolis, for Appellant.
Kelly J. Myhls, Marion County Office of Family & Children, Indianapolis, for Appellees.

OPINION
SHARPNACK, Judge.
Joanne Fisher ("Mother") appeals the termination of her parental rights. Mother raises one issue, which we revise and restate as whether the order terminating Mother's parental rights to T.W. is clearly erroneous because the Marion County Office of Family and Children ("MCOFC") did not prove that it provided Mother with notice of the termination hearing. We affirm.[1]
The relevant facts follow. Mother has a child, T.W., who was born on August 6, 2002.[2] On May 13, 2003, while holding T.W., Mother stabbed T.W.'s father, Robert Williams ("Father"), with a knife. T.W. was splattered with blood but did not sustain any physical injuries. Officers from the Indianapolis Police Department arrested Mother and called the MCOFC to take T.W. into custody.
On May 15, 2003, the MCOFC filed a petition alleging that T.W. was a child in need of services ("CHINS"). On July 8, 2003, Mother appeared at the fact-finding hearing on the petition, and the trial court found that T.W. was a CHINS. On August 5, 2003, the trial court held a dispositional hearing, and Mother was again present. The trial court ordered T.W. to be removed from Mother's care. The trial court also entered a participation decree, which required Mother to notify the case-worker *1244 of changes in her address, remain in Marion County, contact the caseworker, secure and maintain a source of income, obtain suitable housing, complete a parenting assessment, successfully complete all recommendations developed as a result of the parenting assessment, and visit T.W. on a consistent basis.
Mother was ordered to and failed to complete an anger management program, parenting classes, and counseling for drug and alcohol treatment. Mother also failed to contact her case manager. From May 15, 2003, to November 4, 2004, Mother, as she put it, was arrested "[a]bout five times" for "[m]ostly battery." Transcript at 97, 109.
On February 18, 2004, the MCOFC filed a petition seeking the involuntary termination of the parent-child relationship between T.W., and Mother and Father. On March 9, 2004, Mother appeared at the initial hearing and requested counsel, which the trial court appointed.
The trial court held a hearing on June 17, 2004. Mother failed to appear at this hearing and, after finding that Mother had not received adequate notice of the hearing, the trial court set a fact-finding hearing for August 4, 2004. On August 4, 2004, Mother did not appear but was represented by her attorney. The trial court continued the hearing because Father was intoxicated and set the fact-finding hearing for September 9, 2004.
On September 9, 2004, Mother failed to appear but was represented by her counsel. The Father failed to appear but was represented by counsel. The trial court granted a continuance as to Mother because she was in jail and announced that the hearing was continued to November 4, 2004. The trial court proceeded to hear evidence with regard to Father.
On November 4, 2004, the trial court held a termination hearing. Father was not present at the termination hearing. Mother and her attorney were present. Mother testified that she was not in a position to meet T.W.'s needs. In closing arguments, Mother's attorney argued that the MCOFC had failed to provide Mother with notice of the termination hearing. The trial court entered findings of fact and conclusions thereon and granted the MCOFC's petition and terminated the parent-child relationship between Mother and T.W.[3]
The sole issue is whether the order terminating Mother's parental rights to T.W. is clearly erroneous because the MCOFC did not prove that it provided Mother with notice of the termination hearing. "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." In re M.B., 666 N.E.2d 73, 76 (Ind. Ct.App.1996), trans. denied. However, these parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Id. Parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct.App.1999), reh'g denied, trans. denied, cert. denied, 534 U.S. 1161, 122 S.Ct. 1197, 152 L.Ed.2d 136 (2002). The purpose of terminating parental rights is not to punish parents, but to protect children. Id.
*1245 Mother does not challenge the trial court's findings in support of termination under Ind.Code § 31-35-2-4.[4] Rather, Mother argues that the MCOFC failed to prove that it provided her with notice of the termination hearing, which resulted in a violation of her due process rights.[5]
The Fourteenth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. We have repeatedly noted that the right to raise one's children is more basic, essential, and precious than property rights and is protected by the Due Process Clause. In re M.M., 733 N.E.2d 6, 10 (Ind.Ct.App.2000). "Although due process has never been precisely defined, the phrase expresses the requirement of `fundamental fairness.'" Id. (citing E.P. v. Marion County Office of Family & Children, 653 N.E.2d 1026, 1031 (Ind.Ct.App.1995)). We have held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Thompson v. Clark County Div. Of Family & Children, 791 N.E.2d 792, 795 (Ind.Ct.App.2003) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)), trans. denied.
Mother argues that the MCOFC failed to prove that they had provided her with notice of the termination hearing at least ten (10) days prior to the hearing. Ind.Code § 31-35-2-6.5 (2004), which lays out the notice requirements in a termination proceeding, provides:
(a) This section applies to hearings under this chapter relating to a child in need of services.
(b) At least ten (10) days before a hearing on a petition or motion under this chapter:
(1) the person or entity who filed the petition to terminate the parent-child relationship under section 4 of this chapter; or
(2) the person or entity who filed a motion to dismiss the petition to terminate the parent-child relationship under section 4.5(d) of this chapter;

*1246 shall send notice of the review to the persons listed in subsections (c) and (d).
(c) Except as provided in subsection (h), the following persons shall receive notice of a hearing on a petition or motion filed under this chapter:
(1) The child's parent, guardian, or custodian.
* * * * *
"Compliance with the statutory procedure of the juvenile code is mandatory to effect a termination of parental rights[.]" Styck v. Karnes, 462 N.E.2d 1327, 1329 (Ind.Ct.App.1984). However, statutory notice is a procedural precedent that must be performed prior to commencing an action but it is not an element of plaintiff's claim. Indiana Carpenters Cent. & Western Indiana Pension Fund v. Seaboard Sur. Co., 601 N.E.2d 352, 357 (Ind.Ct.App.1992), reh'g denied, trans. denied; City of Indianapolis v. Satz, 268 Ind. 581, 584, 377 N.E.2d 623, 625 (1978). Failure to comply with a statutory notice is a defense that must be asserted. Satz, 268 Ind. at 584, 377 N.E.2d at 625. Once placed in issue, the plaintiff bears the burden of proving compliance with the statute. Id.
The record shows that on March 9, 2004, Mother appeared at the initial termination hearing. Mother requested counsel, which the trial court appointed. On August 4, 2004, Mother did not appear but was represented by her attorney. The trial court continued the hearing because Father was intoxicated and set the fact-finding hearing for September 9, 2004. On September 9, 2004, Mother failed to appear but was represented by her counsel. The Father failed to appear but was represented by counsel. The trial court granted a continuance as to Mother because she was in jail and announced that the hearing was continued to November 4, 2004.
On November 4, 2004, the trial court held a fact-finding hearing on the termination petition. Mother and her attorney were both present at the fact-finding hearing. Mother's attorney admitted that Mother was informed of the hearing date at the beginning of the hearing and raised the argument of lack of notice only at the end of her closing argument. Mother testified at the fact-finding hearing. Mother testified that she was not in a position to meet T.W.'s needs. Mother also testified that she brought Shaniqua Fowler to court "[b]ecause she's my niece and I want her to adopt my son." Transcript at 92-93. Further, the following exchange occurred at the trial:
THE COURT: . . . I would ask that the Office of Family and Children submit Proposed Findings of Fact and Conclusions of Law by  within ten days of today's date.
[MOTHER'S ATTORNEY]: Judge, would I have an opportunity to review those and provide either alternative or an objection or comment on them?
[GUARDIAN AD LITEM'S ATTORNEY]: Can't counsel just submit her own Findings of Fact, Your Honor?
THE COURT: You're free to do that if you would like to do that. And normally, that's what really I should be saying is that you both have that right.
[MOTHER'S ATTORNEY]: Sure. I will do the same thing.
Transcript at 160-161. Based on Mother's representation, testimony at the fact-finding hearing, and ability to tender her own *1247 findings of fact, we cannot say that Mother was denied the opportunity to be heard.[6] Thus, Mother was not denied her due process rights. See, e.g., In re C.C., 788 N.E.2d 847, 856 (Ind.Ct.App.2003) (holding that father's procedural due process rights were not violated because father was represented at the final hearing date by counsel, father had previously testified on his own behalf, and because father did not have a constitutional right to be present at the termination hearing), trans. denied.
Even assuming arguendo that the MCOFC was required to provide proof of notice to mother of the termination hearing at least ten days prior to the termination hearing, we find any such procedural irregularity did not violate Mother's due process rights. Mother's attorney told the trial court that Mother was informed of the date of the termination hearing. Mother was present, represented by counsel, and testified. Further, Mother has not shown any prejudice to her by the lack of notice. Mother's argument that "[i]t is unknown from the record whether Mother's failure to present a defense was the result of lack of advance notice of the hearing, or the result of other factors" does not constitute a showing of prejudice. Appellant's Brief at 10. Thus, the trial court did not err in terminating Mother's parental rights. See, e.g., TeWalt v. TeWalt, 421 N.E.2d 415, 420 (Ind.Ct.App. 1981) (holding that because appellant presented no prejudice "caused by her not receiving notice we can find no reversible error"), reh'g denied.
For the foregoing reasons, we affirm the trial court's involuntary termination of Mother's parental rights.
Affirmed.
MAY, J. and VAIDIK, J. concur.
NOTES
[1] We direct Mother's attention to Ind. Appellate Rule 46(A)(10), which requires an appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."
[2] Mother also has two grown daughters who are not involved in this case.
[3] The trial court also terminated Father's parental rights, but he does not appeal the termination.
[4] Ind.Code § 31-35-2-4(b)(2) (2004) provides that a petition to terminate a parent-child relationship involving a CHINS must allege that:

(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under I.C. XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
[5] Mother does not argue that she was not provided with notice. Instead, she argues that we should reverse the termination because the MCOFC failed to provide proof that they provided her notice.
[6] Mother argues that the MCOFC presented evidence that Father "was served with notice of the proceedings, but presented no evidence that Mother was served notice." Appellant's Brief at 8. Mother directs us to two letters sent by the MCOFC to Father. The letters informed Father of the August 4, 2004, hearing and the September 9, 2004, hearing. Father failed to appear at the September 9, 2004, hearing at which the trial court heard evidence with regard to Father. Unlike Father's failure to appear, Mother appeared, was represented by counsel, and testified at the November 4, 2004, hearing at which the trial court heard evidence with regard to Mother.