OHIO OIL COMPANY *v.* FIDELITY & DEPOSIT COMPANY OF MARYLAND ET AL.

[No. 16,835.  Filed June 16, 1942.  Rehearing denied October 21, 1942.  Transfer denied December 3, 1942.]

*Carl A. Huebner,* of Hammond, and *R. H. Fletcher,* of Findlay, Ohio, for appellant.

*Perry R. Chapin, Wayne A. McDaniel,* and *Tinkham & Tinkham,* all of Hammond, for appellees.

BEDWELL, J.—On December 15, 1936, the appellee Thomas McQueen, as principal, with the appellee Fidelity and Deposit Company of Maryland, as surety, filed with the State Highway Commission their bond in the penal sum of $600,000 to secure the performance of a contract entered into between McQueen and the State Highway Commission of Indiana for a highway improvement in Lake and Porter counties. Thereafter, the appellee McQueen entered into a subcontract with the Red Top Construction Company, Inc., for certain work upon said job which required the use of trucks and other gasoline and oil consuming equipment.

The appellant, Ohio Oil Company, instituted this action upon the bond executed by McQueen and Fidelity and Deposit Company of Maryland to recover a claimed balance of $1,294.53 alleged to be due it for gasoline, oil, and grease sold and delivered by it to the subcontractor Red Top Construction Company, Inc., which became insolvent after it completed its subcontract.

There was a trial by court with a general finding for appellees. Appellant is relying upon the overruling of its motion for a new trial as error, and particularly the ground thereof attacking the sufficiency of the evidence to sustain the decision of the trial court.

The two questions presented for determination may be specified as follows:

1. Does the evidence, without conflict, show that appellant furnished the particular materials for which it seeks to recover, upon the credit of, and to be used in the carrying forward of, the particular contract of

McQueen with the State Highway Commission that was secured by the bond sued upon?

2. If such materials were sold on the credit of and furnished for the carrying forward or completion of such particular contract, what is the legal effect of the diversion by the subcontractor of a portion of the materials and their use for other purposes, or in carrying forward other contracts?

In the determination of the first question it is axiomatic that this court will not weigh the evidence or determine the credibility of the witnesses. The right to do so was solely with the trial court and we are only interested in ascertaining from the record whether there was a conflict in the evidence as to some essential allegation which appellant was required to establish in order to recover.

Appellant's complaint proceeds upon the theory and alleges that the materials for which it seeks to recover "were delivered to said Red Top Construction Company, Inc., at the place in Lake County, Indiana where said improvements were being constructed and were by said Red Top Construction Company, Inc., consumed and used in equipment employed by it in the fulfillment of said contracts."

The following facts are shown by the evidence: After McQueen had been awarded a contract by the Indiana State Highway Commission for the improvement of a portion of State Highway No. 30 in Lake and Porter counties, he entered into a subcontract with Red Top Construction Company, Inc., by which it was to haul certain materials in trucks for use in the improvement. The Red Top Construction Company, Inc., was a corporation and R. C. Shipp was connected therewith. It maintained an office in Hammond about fifteen miles from the particular improvement, which was in the

general charge of Margaret Shipp, the wife of R. C. Shipp, and her sister, A. V. Oman. At or near its office in Hammond it had a large permanent yard where the trucks of R. C. Shipp and Red Top Construction Company, Inc., were stored, repaired, and serviced with gasoline, oils, and grease. At the time that Red Top Construction Company, Inc., was carrying on this particular contract it, or R. C. Shipp, had in Indiana, and in the same vicinity, a number of other contracts where it used trucks and other motor equipment. After the Red Top Construction Company, Inc., obtained its subcontract from McQueen it established a temporary yard near the McQueen job, and in this yard it had an underground tank for the storage of gasoline and pumped the same therefrom into motor vehicles. It also had a foreman in charge of this particular yard. The truck driver of appellant testified that he delivered gasoline, oil, and grease to this temporary yard for an agreed price of $2,407.50. Appellant admitted credits and payments upon the account and claimed a balance of $1,294.53 as unpaid.

In making proof of its claim appellant identified and introduced into evidence a large number of invoices for materials claimed to have been delivered on different dates. These invoices were not made to Red Top Construction Company, Inc., but designated that the materials were sold to R. C. Shipp, but upon each there is a receipt for the materials signed by Red Top Construction Company, Inc. After the name of R. C. Shipp on such invoices, in parenthesis, was the word "McQueen." Some of these invoices contained the word and figures "Con R 1463-1464" which were the proper numbers designating the contract of McQueen; but others contained the word and figures "Con 1363-1364" which figures had no connection with the contract of

McQueen. The evidence further disclosed that not all of the materials that were delivered at the temporary yard in the vicinity of the McQueen job were used in the carrying forward of such contract. Trucks after being serviced with gasoline, oil, and grease from the supplies in this temporary yard, would be sent to work upon other projects of R. C. Shipp; and trucks would be serviced in this particular yard and sent to the permanent yard at Hammond for repairs from which they might be sent upon other jobs. Employees in the general office at Hammond, if in the vicinity of the temporary yard, would stop there and have their automobiles serviced with gasoline, oils, or grease, if convenient.

It is a fair inference from the evidence that no attempt was made by the Red Top Construction Company, Inc., to use gasoline, oils and grease delivered to this temporary yard near the McQueen job exclusively in the carrying forward of the McQueen contract, but the same were used indiscriminately upon the McQueen job and upon other contracts or work of R. C. Shipp. Margaret Shipp, the wife of R. C. Shipp, testified that shortly after the work upon the McQueen job began she had a conversation with Mr. Peterson, the truck driver of appellant, relative to the deliveries of gasoline; and that since they had a large account due at the garage in Hammond, Peterson suggested that he would charge the gasoline that was delivered to the garage to different contracts that R. C. Shipp had, such as the McQueen, Proudfoot, and various other jobs that Shipp was working on, and that this was done. The invoices showed large quantities of "Linco Golden Gasoline" and there was testimony that all of this gasoline was delivered at the garage in Hammond, although it was charged to the McQueen job.

After the subcontract of the Red Top Construction

Company, Inc., was completed it obtained from the appellant an instrument by which the appellant did waive and relinquish all right to a lien upon the contract price or any monies due and owing the Red Top Construction Company, Inc., from McQueen, by virtue of or arising out of his particular contract for the improvement in question. This seemingly was filed with McQueen or the State Highway Commission so that the Red Top Construction Company, Inc., could obtain payment for the amount due it on its subcontract. Also, there was evidence that in connection with the obtaining of payment by the Red Top Construction Company, Inc., from McQueen, an agreement was made between the truck driver of appellant and the Red Top Construction Company, Inc., that a balance of $800 was due for materials furnished to the Red Top Construction Company, Inc., for the McQueen job, and that thereupon such sum was paid by the Red Top Construction Company, Inc. Appellant claims that this $800 was payment upon account and not a satisfaction of the balance. Evidence further indicated that appellant was selling R. C. Shipp oil, grease, and gasoline for his other jobs; that it had a large account with him; that one-half cent was added to the price of each gallon delivered near the McQueen job which was refunded, not to Red Top Construction Company, Inc., but R. C. Shipp.

While under the mechanics lien law of various jurisdictions, there is conflict in authority on the question of whether a materialman is entitled to a lien for materials not actually incorporated into the structure or improvement, there is a general agreement that if a materialman sells his materials without any understanding as to their application, he can assert no lien upon the building upon which they

may be used, since, in such case, he relies exclusively upon the credit of the buyer and takes no security. The lien is acquired, therefore, only when the materials are furnished with an understanding that they are to be used for a purpose named in the statute, and not when they are supplied under an ordinary sale on credit or on open account, although the buyer may actually use them in the improvement. *Topp* v. *Standard Metal Co.* (1911), 47 Ind. App. 483, 94 N. E. 891; *Crawford* v. *Crockett* (1876), 55 Ind. 220; *Jackson* v. *J. A. Franklin & Son* (1939), 107 Ind. App. 38, 23 N. E. (2d) 23; 36 Am. Jur., Mechanics' Liens, § 75, p. 62 and cases and annotations there cited.

The statute under which appellees executed the bond sued on, same being Acts of 1935, ch. 88, § 6, p. 249 (§ 36-112, Burns' 1933), prescribes the form of such bond and sets forth the conditions and provisions thereof. Such statute requires every bidder to submit his bond with his proposal and that the bond be conditioned upon the faithful performance of the work, "and conditioned also upon the payment by the contractor and by all subcontractors for all labor performed or materials furnished or other services rendered in the construction of the highway." By the terms of the bond sued upon the appellees obligated themselves to "pay all lawful claims of subcontractors, materialmen and laborers, for labor performed and materials furnished or other services rendered in the carrying foward, performing and completing of said contract." This provision of the statute became a part of appellees' bond with the same force and affect as if it had been written therein. The statutory provisions, and the provisions of the bond, constitute the contract upon which the surety had a right to stand and by which its liability is to be determined. The surety did

not engage to become liable for debts incurred, generally, by a subcontractor, nor did the surety or McQueen agree that any person, who might have a claim against the subcontractor for materials furnished to it, would have a right to recover as against them. It was only for materials furnished the subcontractor "in the carrying forward, performing and completing of said contract" for which the materialman could recover upon such bond.

While there has been much controversy as to whether recovery could be had upon the bond of a contractor for particular materials furnished, it is not understandable how, under this particular statute, a materialman could recover for materials furnished to a subcontractor unless they were furnished upon the credit of and with the understanding that they were to be used in the carrying forward of the contract secured by the bond of the general contractor. So in the case of George T. Miller Con. Co. v. Standard Oil Co. (1933), 205 Ind. 509, 512, 513, 185 N. E. 639, 91 A. L. R. 1025, where the appellee had furnished to the appellant, a state highway contractor, certain gasoline and oils to be used by his employees in trucks and machinery in construction of a state highway, the Supreme Court held that the materialman could maintain an action upon the contractor's statutory bond for such materials that were so furnished and so used. In the course of its opinion the court says:

> "It is contended by the appellant Surety Company that gasoline and oil used in the construction of a highway, and actually consumed therein as fuel for trucks, machinery, et cetera, does not come within the terms of the statutory bond. Such material furnished for use in, and used and consumed in, the construction of a highway is covered by the bond. *Federal Paving Co. et al.* v. *Raschka et al.* (1924), 82 Ind. App. 416, 141 N. E. 644.

> "The appellee was not required to inform itself as to the ownership of the trucks, or as to the arrangement between the contractor and their owner for their use. If it furnished gasoline and oil at the material depots and it was consumed in the construction of the highway, it is protected by the bond."

It might be mentioned that in the above case the materialman did not seek to recover for any oil or gasoline except that which was furnished for the improvement covered by the contractor's bond. There was eliminated from its account the portion thereof which was for materials not actually used in the improvement.

In the case of *Mid. W. Roads Co.* v. *Gradmont Haulage Co.* (1937), 103 Ind. App. 297, 301, 7 N. E. (2d) 528, this court considered an action where the appellee recovered against the appellants and upon their bond given to the Indiana State Highway Commission to secure the performance of a contract for the construction of a state highway. The appellee had furnished men and trucks to haul dirt in the construction of such highway and sought to recover for the value of the labor of the truck drivers and the value of the use of the trucks. The appellants claimed they were not liable therefor and that such claim was not covered by the terms of their bond, which was, as far as any question here involved is concerned, identical with the bond in the case for determination. In the course of its opinion this court says:

> ". . . The underlying equity of a mechanics' lien relates to a direct addition to the substance of the thing to which the lien attaches, while the general purpose of the statutory bond here involved is to protect all persons who supply labor or materials which 'go into' the construction of the highway, regardless of whether it becomes a physical part of the highway or not. The bond is provided for

their benefit in lieu of the benefits of a mechanic's lien. . . ."

In the case of *Southern Surety Co.* v. *National Lumber Co.* (1920), 73 Ind. App. 592, 602, 122 N. E. 686, Judge Enloe of this court considered a case where a materialman sought to recover upon a contractor's bond which had been given for the construction of a sewer in the City of South Bend. The materialman had sold lumber and materials which did not enter into and become a part of the completed work, but were only used as appliances to hold the banks and prevent the sides of the trench from caving in while the work of excavating said trench was being performed, and which were thereafter removed by the subcontractor. The contract between the City of South Bend and the principal contractor provided that it, "agrees to pay for all labor and material used in said work, except engineering." In the opinion there is an extensive review of authorities in other jurisdictions, several of which are mechanics' lien cases. This court reached the following conclusion:

"From the foregoing authorities it fairly appears to be the rule that no action can be maintained upon a contractor's bond, providing for the payment for all materials used in such construction, where the materials furnished and used constituted an appliance, which, though employed in the work, survive its performance, and can be used upon other contracts; . . ."

We do not pass upon the question of whether there could be a recovery for materials furnished but not actually consumed in the carrying forward of the contract of McQueen; but such case lends strong support to the contention of appellees that there could be no recovery for materials that were furnished to a sub-

contractor but never used in any sense in the carrying forward of the contract of the principal contractor.

Appellant has not called to our attention any authority in this jurisdiction which sustains the right of a materialman to a lien, when materials are furnished a subcontractor, but not used. It is relying largely upon authorities in other jurisdictions where the question involved was the right under the mechanics' lien statutes of such jurisdiction to a lien for materials furnished a contractor or owner but not actually used in the improvement. As we have heretofore stated, there is conflict between the different jurisdictions as to whether under the mechanics' lien law the material must be not only furnished for but also actually used in the improvement. See 36 Am. Jur., Mechanics' Liens, §72, p. 59.

The general rule in this jurisdiction is well stated in the case of *Barnett* v. *Stevens* (1896), 16 Ind. App. 420, 430, 43 N. E. 661, 45 N. E. 485, where this court says:

"The general rule is that in order to acquire a lien under our statute it is necessary for the materialman to show that the improvement was made by the authority of the owner of the real estate, and that he furnished the material for the building, *and that such material was used in the building,* and that within the time prescribed by the statute he filed in the office of the recorder of the county the proper notice of his intention to hold such lien." (Our italics.) See, also, *Potter Mfg. Co.* v. *A. B. Meyer & Co.* (1909), 171 Ind. 513, 518, 86 N. E. 837, 131 Am. St. Rep. 267.

The exceptions to such rule arise where the materials have been furnished by the materialman to the owner to be incorporated in the improvement, but the owner, without the consent of the materialman, diverts them. So in the case of *Moore, etc., Lumber Co.* v. *Scheid*

(1918), 68 Ind. App. 694, 121 N. E. 91, this court held that where the owner, without the knowledge or consent of the materialman, diverted materials that were sold to be used in the construction of a dwelling house, and on the security thereof, the owner was estopped from relying upon the general rule that a materialman claiming a lien must ordinarily show that his materials were actually used in the building against which the lien was asserted. Similar in effect is the opinion of this court in *Jackson* v. *J. A. Franklin & Son, supra,* where this court held that a materialman's right to a lien was not divested by the owner's abandonment of the improvement and failure to use the material. It will be noted that these cases are cases where the owner, rather than a subcontractor, diverts the use of the materials furnished.

The cases chiefly relied upon by appellant to sustain its right to recover for materials furnished to the Red Top Construction Company, Inc., although the same were not used in carrying forward or completing of the contract of McQueen, are: *Totten & Hogg Iron, etc., Co.* v. *Muncie Nail Co.* (1897), 148 Ind. 372, 47 N. E. 703; *Red Wing Sewer Pipe Co.* v. *Donnelly* (1907), 102 Minn. 192, 113 N. W. 1; *Frudden Lumber Co.* v. *Kinnan* (1902), 117 Iowa 93, 90 N. W. 515. In the first of these cases the materialman claimed a mechanic's lien for a cylinder that had been manufactured, finished, and furnished for use in the nail mill of appellee. When it was delivered the owner was not ready to install it, but set it on blocks near the machinery to be installed when the old parts would be no longer used. The Supreme Court held that under such circumstances the right to a mechanics' lien was not affected by the appointment of a receiver for the property.

In the case of *Red Wing Sewer Pipe Co.* v. *Donnelly, supra,* the materialman sought to recover the value of sewer pipe that it had delivered to a contractor who had a contract for the installation of a sewer. The action was filed to recover upon the bond of such contractor. The terms and conditions of the contract and bond were not set forth. The court merely said that the evidence in the case sufficiently showed that the goods were sold by the materialman to the contractor and that they were a kind appropriate for use in the performance of the contract and that they were ordered by and delivered to the contractor for that purpose. The court further stated that the analogy of the cases under mechanics' lien law was apt and that it was not necessary that the plaintiff show that the pipe actually entered into the construction of the sewer. The opinion is in conflict with our opinion in *Southern Surety Co.* v. *National Lumber Co., supra.*

In the case of *Frudden Lumber Co.* v. *Kinnan, supra,* the Supreme Court of Iowa held that the materialman who furnished materials for a building was entitled to a lien. The court says at p. 95 of 117 Iowa:

"It is the furnishing of material for a building which entitles the party to a lien and its actual use in the construction thereof need not be shown."

It is apparent that these cases are distinguishable from the case for determination, and that the Iowa and Minnesota cases are based upon the rule applied in such states concerning the actual use of materials in an improvement, which is altogether different from the well established rule in Indiana. There are strong equitable reasons for holding the owner's property subject to a materialman's lien in those cases where the

materialman furnishes the material for the improvement of the property, but the owner, without his knowledge, diverts it to other uses. But, we cannot see any equitable reason, in a case like this, for holding the principal contractor, and particularly the surety upon his bond, liable for materials furnished to a subcontractor, which are, without their knowledge, diverted by such subcontractor and not used in the carrying forward of the contract secured by the principal contractor's bond.

Justice Story in *Miller* v. *Stewart* (1824), 9 Wheat. 680, 6 L. Ed. 189, in discussing the obligation of a surety said:

"Nothing can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. . . . He has a right to stand upon the very terms of his contract; . . ."

The appellant was furnishing the materials in question to a subcontractor. It had no contract with the principal contractor nor his surety. Its right arose solely because of the terms of the statute and the provisions of the bond of the principal contractor. The surety of the principal contractor was bound to pay for materials furnished in the carrying forward, performing, and completing of said contract. Neither on principle or authority should it be liable for materials that were not so furnished and used. The surety relied, and had a right to rely, upon the plain terms of the bond. It would not be assumed to know all the conditions and circumstances affecting the carrying on of an improvement of this nature. The materialman, when it furnished materials, had every opportunity to

inform itself as to whether the subcontractor was using the materials in the improvement in question. Although appellant claims it had no knowledge, there are many circumstances which indicate that the diversion was such that appellant and its truck driver in their extensive dealings with the subcontractor knew, or should have known, of such diversion. There was direct evidence that appellant charged to the McQueen job gasoline which it delivered at Hammond and which it knew was not for use in the McQueen job.

We think that there is evidence from which the trial court could have determined that the appellant did not furnish the materials for which they claimed upon the credit of and with an understanding that they were to be used in this particular improvement. The fact that they were not charged to the subcontractor but were charged to R. C. Shipp; the fact that appellant was willing to charge materials furnished other places to this particular improvement, and did so; the fact that appellant released its lien claim for materials furnished for this improvement and that it accepted a payment of a particular sum as being the balance due for materials furnished for this improvement, all indicate that appellant was not selling the particular materials upon the credit of and with an understanding that they were to be used in the particular improvement. Again the trial court might well have found, under the evidence here introduced, that appellant had failed to establish its allegation that the materials for which it sought to recover were consumed and used in the particular improvement.

For both reasons, judgment of the trial court is affirmed.

NOTE.—Reported in 42 N. E. (2d) 406.