**DOW–PAR, INC., Appellant–Plaintiff,**

v.

**The LEE CORPORATION, Construction Design of Indiana, Inc., and United States Fidelity and Guaranty Company, Appellees–Defendants.**

No. 49A04–9310–CV–372.

Court of Appeals of Indiana,
Fourth District.

Dec. 12, 1994.

Rehearing Denied Jan. 24, 1995.

Transfer Denied May 4, 1995.

Dawn E. Wellman, Brand & Allen, Greenfield, for appellant.

Dean T. Barnhard, Barnes & Thornburg, Indianapolis, for appellees.

## OPINION

RILEY, Judge.

Plaintiff–Appellant Dow–Par, Inc., appeals from a summary judgment in favor of Defendants–Appellees the Lee Corp., Construction Design of Indiana, Inc., and United States Fidelity and Guaranty Company.

We affirm.

### ISSUES [1]

We address the following issues:

1. Does IND.CODE 36–1–12–13.1 (1993) give a lessor of equipment to a subcontractor the right to assert a claim under a statutorily required payment bond?

2. Notwithstanding I.C. 36–1–12–13.1, does a lessor of equipment to a subcontractor have an actionable claim pursuant to the terms of the contractor's payment bond?

---

1. Both parties raise additional arguments for our consideration; however, because we are able to sustain the trial court's decision based on the issues discussed, we decline to address additional arguments.

## FACTS

In May, 1990, the Town of Fishers, Indiana, entered into a contract with the Lee Corporation (Lee) to act as general contractor for the building of the Fishers Town Complex (Fishers Complex). In compliance with I.C. 36–1–12–13.1, Lee secured a Labor and Material Payment Bond (the Bond) from United States Fidelity and Guaranty Company (USF & G) which provides, in part, that Lee and USF & G

> hereby jointly and severally agree with the [Town of Fishers] that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant.

(R. 158). Claimants are defined as "one having a direct contract with the Principal, or with a sub-contractor of the Principal for . . . rental of equipment directly applicable to the contract." *Id.* Payment to claimants under the Bond is limited by the following provision:

> The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

*Id.*

In June, 1990, Lee subcontracted with Construction Design of Indiana, Inc. (CDI) to provide earth moving services on the Fishers Complex construction site. The agreement provided that Lee would pay CDI $235,053.00 for the performance of the subcontract.

CDI entered into a series of equipment leases with Dow–Par, Inc. (Dow–Par), an Indiana corporation which buys, sells, and leases construction equipment. None of the rental agreements specified a particular project site at which CDI would operate the leased equipment; however, CDI used the equipment at the Fishers Complex site as well as various other building sites.

During the course of the project, Lee paid $208,480.00 to CDI; however, before the project was completed, CDI became insolvent and could not fulfill its obligations under its subcontract. Lee incurred additional costs of $102,663.78 completing the project, thus, pursuant to the subcontract between Lee and CDI, CDI owes Lee $76,091.64, the difference between the contract price and the actual cost of completion. CDI also failed to pay Dow–Par $77,400 in monthly lease payments, fuel, freight, and interest.

In November of 1990, Dow–Par filed a notice of claim before the Fishers Town Hall Board and later initiated a suit against Lee, CDI, and USF & G seeking the monies owed to it by CDI. Lee and USF & G moved for summary judgment which was granted.[2] It is from this judgment that Dow–Par appeals.

## DISCUSSION

■ In our review of an entry of summary judgment, we consider the same issues and conduct the same inquiry as the trial court. *O'Donnell v. American Employers Ins.* (1993), Ind.App., 622 N.E.2d 570, 572, *reh'g denied, trans. denied.* Summary judgment is only appropriate where the moving party demonstrates by properly designated evidentiary matter that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. *See* Ind.Trial Rule 56(E). All evidence must be construed favorably to the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190; *J.A.W. v. Loretta Roberts* (1994), Ind.App., 627 N.E.2d 802, 807. We will affirm a trial court's grant of summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial

2. Although counsel for CDI entered an appearance and filed an answer on behalf of CDI, he subsequently moved to withdraw his appearance, CDI has not retained substitute counsel and is not a party in this appeal.

court. T.R. 56(C); *Stowers v. Norwest Bank Indiana* (1993), Ind.App., 624 N.E.2d 485, 488, *reh'g denied.*

■ Whether a person who furnishes labor or materials to a subcontractor on a public works project is within the scope of the payment bond furnished by the general contractor to the principal depends upon the terms of the applicable statute and the terms of the bond. 17 Am.Jur.2d *Contractor's Bond* Section 19 (1990). Thus, initially, we examine whether Dow–Par, a lessor of equipment to a subcontractor, is protected under I.C. 36–1–12–13.1 which governs payment bonds secured on public works projects.

I.C. 36–1–12–13.1 is part of a public works statutory scheme which provides for the payment of those who work on public works projects. *Carpenters Pension Fund v. Seaboard* (1992), Ind.App., 601 N.E.2d 352, 357, *reh'g denied, trans. denied,* (1993), Ind., 615 N.E.2d 892; *See Concrete Steel v. Metropolitan Casualty Ins.* (1930), 95 Ind.App. 649, 653, 173 N.E. 651, 652. The scheme secures payment for subcontractors, laborers, materialmen, and service providers in relation to or in connection with public works construction where mechanics liens are unavailable because they cannot be acquired or enforced upon or against property held for public uses. *Carpenters Pension Fund,* 601 N.E.2d at 357 (citing *MacDonald v. Calumet Supply Co.* (1939), 215 Ind. 536, 543, 19 N.E.2d 567, 570, *reh'g denied,* 215 Ind. 536, 21 N.E.2d 400); *Townsend v. Cleveland Fire–Proofing* (1897), 18 Ind.App. 568, 571, 47 N.E. 707, 708.

■ Although the payment bonds required by section 13.1 are said to replace mechanics liens in the public work projects situation, "a mechanic's lien provides relief to laborers which is in direct conflict with the rights of a landowner, while the public work statutes provides a remedy against a surety which has been compensated for assuming that risk." *Carpenters Pension Fund,* 601 N.E.2d at 356. Thus, where the mechanics liens statute serves the dual function of narrowing a claimant's rights in order to protect the landowner while providing a remedy for unpaid laborers, the primary purpose of the statutory payment bond is to protect suppliers of labor or materials, not the general contractor or the public body or principal that owns the property. 17 Am.Jur.2d *Contractor's Bond* Section 54 (1990); *Carpenters Pension Fund,* 601 N.E.2d at 356 (The payment bond statute establishes the rights of those claimants who would be left without the ability to recover for the materials, labors, or services if general contractors or public entities were unable to make payment.). This difference in purpose has led us to interpret a claimant's rights under I.C. 36–1–12–13.1 quite differently than a similar claimant's rights under the mechanic's lien statute. *See Middle West Roads Co. v. Gradmont Haullage* (1937), 103 Ind.App. 297, 301, 7 N.E.2d 528, 530 ("The underlying equity of a mechanic's lien relates to a direct addition to the substance of the thing to which the lien attaches, while the general purpose of the statutory bond ... is to protect all persons who supply labor or materials which 'go into' the construction of the highway, regardless of whether it becomes a physical part of the highway or not.... Therefore, [mechanic's lien] cases are not applicable."); *Garco Indus. Equip. v. Mallory* (1985), Ind.App., 485 N.E.2d 652, 654, *reh'g denied, trans. denied* ("[T]he contract of a surety for hire is viewed as analogous to an insurance contract, and is construed most strictly against the surety and in favor of the person to be protected." (citations and footnote omitted)).

■ Traditionally, payment bond statutes have been "liberally construed to carry out the spirit of the legislation on this subject." *Lane v. State* (1896), 14 Ind.App. 573, 578, 43 N.E. 244, 245; *Fry v. P. Bannon Sewer Pipe* (1913), 179 Ind. 309, 316, 101 N.E. 10, 13 (Within a surety's undertaking as required by statute, a liberal interpretation is indulged in favor of the materialman and laborer.). Thus, these statute are liberally construed regarding the classes of laborers, materialmen, and suppliers covered. *See* 17 Am. Jur.2d *Contractor's Bond* Section 55 (1990). However, the obligation of a surety "shall not be extended beyond their undertaking under the statute." *Fry,* 179 Ind. at 316, 101 N.E. at 12 (Where the statute requires a bond to run to those furnishing labor or material to a

contractor, the bond does not include subcontractors.).

Looking to statutory language, we find that I.C. 36–1–12–13.1 extends its protection to "subcontractors, laborers, material suppliers, and those performing services."[3] Material includes "supplies, goods, machinery, and equipment," I.C. 36–1–2–9.5, and a subcontractor is "a person who is a party to a contract with the contractor and furnishes and performs labor on the public work project" and includes "material men who supply contractors or subcontractors." I.C. 36–1–12–1.4. Thus, a person who supplies equipment to a subcontractor is protected by the statute. However, we have no indication in the statute that the term "supplier" should include a lessor. "Supplier" is not defined in chapter 12 and we cannot assume that the Legislature intended payment bonds to benefit a lessor.

Our reluctance to include a lessor within the term "supplier" is reinforced by the language of section 3 of the same chapter which provides for public works performed by a board's own work force and states, in relevant part:

> For the purposes of this subsection, the cost of a public work project includes the cost of materials, labor, equipment, rental, a reasonable rate for use of trucks and heavy equipment owned, and all other expenses incidental to the performance of the project.

I.C. 36–1–12–3(a). Specific inclusion of "rental" in this subsection and the silence as to the same in I.C. 36–1–12–13.1 does not allow us to conclusively state that the Legislature intended to exclude lessors of equipment from the protection of a payment bond; however, "[t]he Legislature is presumed to be aware of existing statutes on the same subject." *Angel v. Behnke* (1975), 166 Ind. App. 541, 552, 337 N.E.2d 503, 511. Considering the entire statutory scheme enunciated in chapter 12, we cannot conclude that the Legislature intended to extend the protection

of a payment bond required by section 13.1 to include a lessor of equipment as a supplier of equipment. *See also Angel,* 166 Ind.App. at 552, 337 N.E.2d at 510–11 (This court refused to extend statutes requiring competitive bids on purchased equipment to include rental equipment because of lack of statutory language.).

Turning to case law interpreting I.C. 36–1–12–13.1 and its predecessors, we do not find extensive precedent construing statutory payment bonds and we find very few cases dealing with an issue similar to the one before us. *See Garco,* 485 N.E.2d at 655; *State v. Warren Bros. Roads* (1945), 115 Ind.App. 452, 456, 59 N.E.2d 912, 913–14. Generally, Indiana courts have been reluctant to expand the scope of statutory payment bonds in deference to legislative decision making. Notwithstanding the general rule of liberal construction of payment bond statutes, the clear and unambiguous language of the statute has been applied and not interpreted. *See Southern Sur. v. National Lumber* (1919), 73 Ind.App. 592, 603, 122 N.E. 686, 689 (No action can be maintained on a contractor's bond providing for payment for all materials, where the materials were wooden braces to hold banks of earth in place when laborers excavated a trench, which though employed in the work, survive its performance and could be used again. Such appliances are not within the bond even though they are repeatedly used on the same project, wear our and loose all value.); *Montgomery v. Southern Sur.* (1928), 96 Ind.App. 472, 478, 162 N.E. 31, 33 (Equipment sold to a contractor, even though it is used in the construction of the improvement, does not come within the meaning of the bond and statute, nor are repair parts nor repair work for equipment. Such equipment is part of the capital of the contractor. It does not become part of the project.).

However, courts have found it necessary to interpret the statute's requirements in order to allow specific claims within the scope of a

---

**3.** Specifically, it states, in relevant part:
The payment bond is binding on the contractor, the subcontractor, and their successors and assigns for the payment of all indebtedness to a person for labor and service performed, material furnished, or services rendered. The payment bond must state that it is for the benefit of the subcontractors, laborers, material suppliers, and those performing services. I.C. 36–1–12–13.1.

payment bond to give effect to the underlying purpose of the statutory scheme. *See Federal Paving Co. v. Raschka* (1923), 82 Ind.App. 416, 418–19, 141 N.E. 644, 645 (Statute providing that contractor's bond shall be conditioned on payment by contractor and subcontractor of all indebtedness on account of materials furnished in the construction of a highway, feed furnished for horses used in construction work by a subcontractor was material furnished to carry forward, perform and complete the contract.); *Western & S. Indem. v. Cramer* (1937), 104 Ind.App. 219, 225, 10 N.E.2d 440, 442 (quoting 1933 Ind.Act 1142, Sec. 53–202) (Court of appeals interpreted statutory language, "Such bond by its terms also shall be conditioned as to directly inure to the benefit of subcontractors," and affirmed the trial court's grant of attorney's fee to subcontractor in a suit against a surety on a bond.); *Metropolitan Casualty Ins. v. Natural Rock Asphalt* (1937), 103 Ind.App. 687, 689, 6 N.E.2d 739, 740 (Statutory bond protected subcontractor who prepaid freight charges on rock asphalt furnished for a highway construction project.). Most recently, we held that an employee welfare benefit plan which was part of the compensation guaranteed under a collective bargaining agreement between a subcontractor and his laborers was within the class of persons covered by a statutorily required payment bond. *Carpenters Pension Fund*, 601 N.E.2d at 354–56. Utilizing an analysis articulated by the Supreme Court in *United States v. Carter* (1957), 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776, we found that the benefit plan was a trustee for compensation to the laborer, and denying a trustee standing would deny laborers full compensation which runs contrary to the intention of the statute. *Carpenters Pension Fund*, 601 N.E.2d at 356.

From our review of Indiana precedent, a lessor of equipment to a subcontractor does not fall within the class of laborers, materialmen, or suppliers covered by the statute. Although there may be a plausible argument

made that including claimants like Dow–Par effects the general purpose of the statutory scheme, the decision to extend the scope of protection afforded by the statute to a lessor of equipment is best left in the hands of the Legislature whose power we will not usurp. *See Second National Bank of Danville v. Massey–Ferguson Credit* (1985), Ind.App., 478 N.E.2d 916, 918.

Thus, we find that I.C. 36–1–12–13.1 which provides for the payment of those who work on public works projects does not protect a lessor of equipment to a subcontractor.

We next examine whether, under the language of the Bond, Dow–Par is entitled to make a claim against the Bond.

■ Indiana courts have not addressed the issue of the enforcement of extrastatutory provisions of payment bonds; however case law from our sister states suggests that while a surety is held to the exact requirements required by statute to afford protection to specified claimants, terms of a bond which extend protection to other claimants are governed by less stringent rules and may be enforced as valid common law obligations. *Hilton v. Universal Const.* (1919), 202 Mo. App. 672, 679, 216 S.W. 1034, 1037; *Hogan v. Walsh & Wells* (1944), 180 Tenn. 670, 674, 177 S.W.2d 835, 836; *Petition of Leon Keyser, Inc.* (1952), 97 N.H. 404, 408, 89 A.2d 917, 920; *Keys Community College v. Insurance Co. of N. Am.* (1984), Fla.App., 456 So.2d 1250, 1251; 17 Am.Jur.2d *Contractor's Bond* Section 73 (1990). A surety may extend its protection and is bound by the terms of its bond which extend beyond the statute's requirements. *C.S. Luck & Sons v. Boatwright* (1932), 157 Va. 490, 499, 162 S.E. 53, 56; *Travelers Indem. v. Housing Auth. of Miami* (1972), Fla.App., 256 So.2d 230, 234; *Wal–Board Supply v. Daniels* (1981), Tenn. App., 629 S.W.2d 686, 688; *Aluma Systems, Inc. v. Frederick Quinn Corp.* (1990), 206 Ill.App.3d 828, 151 Ill.Dec. 618, 635–36, 564 N.E.2d 1280, 1297–98; 17 Am.Jur.2d *Contractor's Bond* Section 73 (1990).[4]

4. However, other jurisdiction do not allow the statutory bond to be expanded by the surety. *See Construction Materials v. American Fidelity Fire Ins.* (1980), La.App., 383 So.2d 1291, 1294 (A public works bond can be neither broader nor narrower than the law which provides for it, and anything provided for by law and omitted from the bond must be read into the bond while anything provided by the bond which goes beyond the provisions of the law must be read out of it.).

■ According to the Bond, a claimant is "one having a direct contract with the [p]rincipal, or with a sub-contractor of the Principal for ... rental of equipment directly applicable to the contract." (R. 158). The principal named in the Bond is Lee; CDI is a subcontractor of that principal; and Dow-Par had a series of direct contracts with CDI for the rental of earth moving equipment which was used on the Bonded project. Thus, under the plain meaning of the Bond's language, Dow-Par should be a proper claimant entitled to the protection of the Bond.

Dow-Par contends that the rental equipment should be considered "directly applicable to the contract" when it is used on the project toward the performance of the contract. The plain meaning of the Bond favors this interpretation; there is no language in the Bond which precludes this interpretation.

However, the Appellees [5] argue vigorously that because "Dow-Par's equipment leases with CDI were not made in contemplation of use on the bonded project and were most certainly not entered into specifically for the bonded contract," Appellees' Brief at 9, Dow-Par is not a proper claimant under the Bond. They ask us to interpret "equipment directly applicable to the Contract" to mean only that equipment which is used exclusively on the bonded project.

In support of their assertions, the Appellees rely on *Stanray Corp. v. Horizon Const.* (1976), 168 Ind.App. 164, 342 N.E.2d 645, which is distinguishable from the case at bar because it did not turn on whether the material was "furnished for the purpose of being used in constructing the particular improvement," Appellee's Brief at 16–17 (emphasis omitted) (quoting *Stanray*, 168 Ind.App. 164, 176, 342 N.E.2d 645, 653), but whether the mechanic's lien was invalid due to untimely notice by the materialman.

The Appellees also rely on *Lee & Mayfield v. Lykowski, House Moving Eng'r.* (1986), Ind.App., 489 N.E.2d 603, *reh'g denied, trans. denied,* from which they extract the language that "the supplier supply [equipment] solely and exclusively for the benefit of the owner of the property." Appellees' Brief

at 17 (emphasis omitted) (quoting *Lee & Mayfield,* 489 N.E.2d at 608). However, this case is also distinguishable from our facts. In *Lee & Mayfield,* the appellant was a supplier of wheel dollies which were made to order to be sold to the contractor and used to move the appellee's building. *Lee & Mayfield,* 489 N.E.2d at 605. The supplier made a claim pursuant to I.C. 32–8–3–9 under which "lessors of equipment" were proper claimants. *Id.* at 607–08. This court found that a claim for the cost of the dollies did not come within the scope of the statute because

even though the equipment happened to be used on a particular job, the contractor did not acquire it nor the supplier supply it solely and exclusively for the benefit of the owner of the property. The [owner's] moving job motivated [the contractor] to go ahead with the production and initial use of the equipment which he had already contemplated producing for use in his business and for sale or rental to others.

*Id.* at 608. The supplier was selling the dollies as a capital investment to the contractor and not leasing equipment to the contractor who used the supply on a project. In our case Dow-Par's claim is for the cost of the equipment rental, not the cost of purchasing the equipment. *See also Garco,* 485 N.E.2d at 656. The precedent presented by the Appellees does not provide this court with a reason to interpret the definition of "claimant" as the Appellees urge and thus we conclude that Dow-Par, as a lessor of equipment, is a proper claimant under the language of the Bond.

However, payment to claimants under the Bond is limited by the following provision:

The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

*Id.*

■ A surety's liability is measured by the strict terms of its contract, *Garco,* 485

---

5. Appellees Lee and USF & G submitted one appellate brief.

N.E.2d at 654, and the surety has a right to rely upon the plain terms of the bond. *Ohio Oil Co. v. Fidelity · & Deposit Co. of Maryland* (1942), 112 Ind.App. 452, 466, 42 N.E.2d 406, 411. The contract of a surety for hire is viewed as analogous to an insurance contract, and is construed most strictly against the surety and in favor of the obligees and beneficiaries of the bond. *Id.* Any contractual ambiguities are resolved in favor of the beneficiary, *Garco,* 485 N.E.2d at 654; however, the rule of liberal construction does not mean that the bond is construed so as to extend the surety's liability beyond the terms of the contract it has made. 17 Am.Jur.2d *Contractor's Bond* Section 70 (1990). Thus, " 'to the extent, and in the manner, and under the circumstances, pointed out in his obligation, [the surety] is bound, and no further.' " *Warren Bros. Roads,* 115 Ind.App. at 463, 59 N.E.2d at 916 (quoting *Miller v. Stewart* (1824), 22 U.S. (9 Wheat) 680, 702, 6 L.Ed. 189). A surety has a right to stand upon the terms of the bond as written and, aside from the required statutory conditions which may be read into a bond, the court has no power to add other conditions to those fixed by statute. *Southern Sur.,* 73 Ind.App. at 603, 122 N.E. at 690. "The rule that the obligation is to be construed against the surety is of construction only, and if there is no ambiguity, the intention of the parties cannot be disregarded or nullified by construction." 17 Am.Jur.2d *Contractor's Bond* Section 70 (1990); *United States Plywood v. Continental Casualty* (1960), D.C.Mun.App., 157 A.2d 286, 288.

It is undisputed that during the course of the project, Lee paid $208,480.00 to CDI and also incurred additional costs of $102,663.78 to complete CDI's portion of the project after CDI defaulted on its contract. The additional amount exceeded the cost of the contract between Lee and CDI by $76,091.64. According to the limiting language of the Bond, the amount available to Dow–Par under the Bond was reduced by Lee's payment to CDI and therefore no funds were available to Dow–Par to satisfy its claim.

Thus, the trial court did not err when it granted summary judgment in favor of the Appellees.

*CONCLUSION*

We affirm the grant of summary judgment by the trial court and find that I.C. 36–1–12–13.1 which provides for the payment of those who work on public works projects does not protect a lessor of equipment to a subcontractor. Further, we conclude that under the Bond's language, Dow–Par, as a lessor of equipment to a subcontractor, is a proper claimant under the Bond; however, in this case the limiting language of the Bond precluded Dow–Par's claim once Lee paid the full contract price on the subcontract to the subcontractor, CDI.

Judgment affirmed.

FRIEDLANDER, J. concurs.

NAJAM, J. concurs in result with separate opinion.

NAJAM, Judge, concurring in result.

I concur in the result reached by the majority that summary judgment was properly entered against Dow–Par. However, I disagree with the majority's analysis in arriving at that result.

I am not convinced that "a lessor of equipment to a subcontractor does not fall within the class of laborers, materialmen, or suppliers covered by the statute." Op. at 155. The majority is correct that a person who supplies equipment to a subcontractor is protected by the statute, although the majority then states there is no indication in the statute that the term "supplier" includes a lessor. Op. at 154. This reasoning assumes, however, that there is a distinction within the statute between leasing and selling the same equipment to a subcontractor. The majority essentially contends that a lessor of equipment has no claim against a payment bond but that a seller of equipment does.

The authorities cited by the majority do not support this distinction under all circumstances. First, the absence of language in the payment bond statute concerning equipment rental, and its inclusion in Indiana Code § 36–1–12–3, is of no import. Indiana Code § 36–1–12–3(a) does not address those claimants protected under a payment bond.

Rather, it concerns a board's discretion to perform a public works project, by use of its own work force and without awarding a contract, if the cost of the project is less than $75,000.00. The specific inclusion of rental costs for equipment in Indiana Code § 36–1–12–3(a) is obviously intended to ensure that *all* costs of a public works project are considered before a political subdivision can undertake such a project without a payment bond. *See* I.C. § 36–1–12–13.1(a) (Section 13.1 only applies to contracts for public works projects if cost is estimated at more than $75,000.00).

Second, the *Montgomery* and *Southern Surety* decisions cited by the majority, in which claims against the payment bond were denied, both involved material or equipment that was sold to or owned by the contractor and used in the project. *See Montgomery v. Southern Sur. Co.* (1928), 96 Ind.App. at 477–78, 162 N.E. 31, 33 (parts and labor costs incurred by subcontractor for repair of its own equipment used on project not covered by bond because not consumed in project's completion); *Southern Sur. Co. v. National Lumber Co.* (1920), 73 Ind.App. 592, 602, 122 N.E. 686, 689 (lumber used at construction site by subcontractor to brace excavation survived project and could be used by subcontractor for other contracts). I agree that when equipment is sold rather than leased to the contractor (or subcontractor), it becomes part of the contractors's "capital," may be used on other projects not secured by the payment bond at issue and is not indebtedness secured by a payment bond. *See Montgomery*, 96 Ind.App. at 478, 162 N.E. at 33. However, when a contractor leases equipment for use on a public works project, the equipment contributes to its completion and rental costs associated with the project should be recoverable under the payment bond. Lease payments incurred while the equipment is used elsewhere are not recoverable under the bond.

Our courts have held that if there is evidence that equipment or material was used on a public works project and consumed in its completion, these "circumstances might justify an inference" that a valid claim exists under the bond. *See id.* at 478–79, 162 N.E. at 33. The facts of the present case could support such an inference. There is evidence that while Dow–Par's equipment leases with CDI did not specify a particular project site for use of the equipment, CDI utilized that equipment at times on the Fishers Complex site. The costs of leasing Dow–Par's equipment were consumed, at least in part, at the Fishers Complex site. Thus, these costs were indebtedness for material, in the form of equipment rental, furnished for a public works project and secured by a payment bond under Indiana Code § 36–1–12–13.1. *Cf. Metropolitan Casualty Ins. Co. v. Natural Rock Asphalt Corp.* (1937), 103 Ind. App. 687, 689, 6 N.E.2d 739, 740 (asphalt company, which contracted with general contractor to purchase rock but which also paid costs to transport rock, had claim against payment bond for freight costs).

Accordingly, I would hold that a lessor of equipment to a subcontractor is protected under a payment bond issued pursuant to Indiana Code § 36–1–12–13.1 for a public works project. Whether a lessor of equipment has a claim against the payment bond is determined by the extent to which the lessor can prove lease payments for equipment became "part of the project" when that equipment was furnished to and used to further its completion. *See Montgomery*, 96 Ind.App. at 478–79, 162 N.E. at 33–34. After reviewing the evidence in this case, I am not convinced that Dow–Par met its burden of proving its right to payment under the statutory payment bond requirements. I would affirm the judgment on that theory alone.[1]

---

1. The majority's resolution of Issue Two is unnecessary. The bond in this case includes language that limits USF & G's liability "by and to the extent of any payment" by the surety or the principal, and it does not meet the statutory requirement that a bond secure "payment of all indebtedness" to the protected claimants. In other words, such a contractual limitation of liability is inapplicable to those claimants protected by statute and can only be applied to

claimants that do not fall within the protection of Indiana Code § 36–1–12–13.1. Because Dow–Par is a protected claimant under the statutory payment bond requirements, it does not have an independent claim under the terms of USF & G's bond.