Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEYS FOR APPELLANT:

**ZACHARY J. EICHEL**
**MICHAEL L. EINTERZ**
Einterz & Einterz
Zionsville, Indiana

ATTORNEY FOR APPELLEE:

**NEIL E. GATH**
Fillenwarth Dennerline Groth & Towe
Indianapolis, Indiana

FILED
Mar 11 2014, 10:11 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FIDELITY AND DEPOSIT CO. OF MARYLAND, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 03A01-1309-PL-380 |
| | ) | |
| SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION LOCAL UNION NO. 20, SHEET METAL WORKERS LOCAL NO. 20 WELFARE AND BENEFIT FUND, SHEET METAL WORKERS LOCAL NO. 20 INDIANAPOLIS AREA PENSION FUND, SHEET METAL WORKERS LOCAL NO. 20 DEFINED CONTRIBUTION PENSION PLAN, SHEET METAL WORKERS' NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BARTHOLOMEW COUNTY SUPERIOR COURT
The Honorable Kathleen Coriden, Judge
Cause No. 03D02-1112-PL-006385

**March 3, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Fidelity and Deposit Co. of Maryland ("Fidelity") appeals from the Bartholomew Superior Court's grant of a motion for summary judgment in favor of the Sheet Metal Workers' International Association Local Union No. 20 et al. ("the Union"). Fidelity argues that the trial court erred when it determined that the Union was entitled to recover, under a payment bond, unpaid fringe benefit contributions and wage deductions for work performed on a public works project.

We affirm.

## Facts and Procedural History

On December 14, 2009, Bartholomew Consolidated School Corporation ("the School Corporation") entered into a contract with general contractor Bruns-Gutzwiller, Inc. ("Bruns-Gutzwiller") to perform renovations on Columbus North High School. As required by Indiana law,[1] Bruns-Gutzwiller provided to the School Corporation a Labor and Material Payment Bond ("the payment bond") for $21,500,000, the total cost of the renovation project. The payment bond was issued by Fidelity and defined an eligible claimant under the bond as "one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract." Appellant's App. p. 15.

---

[1] Indiana Code § 36-1-12-13.1 requires a contractor working on a public works project to execute a payment bond to the appropriate political agency when the cost of the project exceeds $200,000.

On February 24, 2010, Bruns-Gutzwiller entered into a contract with subcontractor ProClad, Inc. ("ProClad"). Under the contract, ProClad was to provide labor and materials for the renovation project. On November 8, 2010, ProClad entered into a contract with Trademark Roofing and Sheet Metal, Inc. ("Trademark") in which Trademark agreed to provide labor to install materials provided by ProClad. Trademark was a party to a collective bargaining agreement with the Union. The bargaining agreement required Trademark to contribute certain fringe benefits to various benefit funds on behalf of its employee for hours worked. The agreement also required Trademark to make deductions from its employees' wages for union dues and remit those deductions to the Union.

From December 2010 through August 2011, Trademark's employees performed construction work for the Columbus North High School renovation project. During this time, Trademark failed to tender any payment of its union fringe benefit obligations and also failed to remit wage deductions as required by the collective bargaining agreement. At the time Trademark ceased operations in September 2011, it owed a total of $36,153.39 in fringe benefit contributions and unremitted wage reductions. There is no evidence in the record that Trademark possesses assets sufficient to pay these obligations.

On December 2, 2011, the Union filed its complaint in Bartholomew Superior Court, seeking compensation under the payment bond for the unpaid fringe benefit contributions and unremitted wages. The Union and Fidelity submitted cross-motions for summary judgment. The trial court held a hearing on the parties' cross-motions for summary judgment on May 1, 2013. On May 3, 2013, the trial court issued an order

3

granting the Union's motion for summary judgment and denying Fidelity's motion for summary judgment. The trial court's order provided, in relevant part:

> 5. Indiana Code 36-1-12-13.1 requires a contractor [to] execute a payment bond to the appropriate political agency when public works projects exceed a designated number.
>
> 6. IC 36-1-12-13.1 specifically states "the payment bond is binding on the contractor, the subcontractor, and their successors and assigns for the payment of all indebtedness to a person for labor and service performed, material furnished or services rendered. The payment bond must state that it is for the benefit of the subcontractors, laborers, material suppliers, and those performing services."
>
> 7. There is nothing ambiguous about the statute. It does not limit claims against the payment bond to contractors or subcontractors.
>
> 8. To the extent Defendant would have the court limit its liability no further than the subcontractor (second tier) based upon the contract language the court finds the contract to be in violation of the Indiana statute.
>
> 9. There is no dispute that employees of Trademark Roofing and Sheet Metal, Inc. (Trademark) performed labor on the Columbus North Project nor is there any dispute that certain sums of money were due pursuant to their collective bargaining agreement with Trademark which monies were part of the laborers' overall compensation package and were unpaid.
>
> 10. Trademark failed to make the payments and is no longer in business.
>
> 11. Plaintiffs are unable to file a mechanic's lien to force payment of their claim because this is a public works project.
>
> 12. Defendant's position removes any remedy for Plaintiffs and is contrary to the public policy espoused in IC 36-1-12-13.1. The statute is designed to expand the rights of claimants not to narrow their rights. See Indiana Carpenters Central and Western Indiana Pension Fund v. Seaboard Surety Company, 601 N. E. 2d 352 (1992 IN App.) at 356.

The trial court entered judgment in favor of the Union for $36,153.39. Fidelity filed a motion to correct error on May 28, 2013. The trial court held a hearing on

4

Fidelity's motion to correct error on July 17, 2013 and issued an order denying the motion on August 13, 2013.

Fidelity now appeals.

## Standard of Review

Upon review of a grant or denial of summary judgment, we apply the same standard as that used by the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Newnam Mfg., Inc. v. Transco. Ins. Co., 871 N.E.2d 396, 400 (Ind. Ct. App. 2007) (citing Ind. Trial Rule 56(C)). We construe all facts and reasonable inferences in favor of the non-moving party, and our review is limited to those materials designated to the trial court. Id. at 400-01. The fact that the parties made cross-motions for summary judgment does not alter our standard of review; rather, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id. at 401.

## Discussion and Decision

Fidelity argues that the Union failed to "establish itself as an eligible claimant" under either Indiana Code section 36-1-12-13.1 or the terms of the payment bond itself. Appellant's Br. at 2. Indiana Code section 36-1-12-13.1 requires that a Board contracting for public work withhold sufficient monies from the contractor to pay subcontractors, laborers, material suppliers, and those performing services. See Ind. Carpenters Cent. & W. Ind. Pension Fund v. Seaboard Sur. Co., 601 N.E.2d 352, 357 (Ind. Ct. App. 1992), trans denied. As the trial court noted in its order, Subsection (a)(2) of the statute provides

that a payment bond for a public works project "is binding on the contractor, the subcontractor, and their successors and assigns for the payment of all indebtedness to a person for labor and service performed, material furnished, or services rendered. The payment bond must state that it is for the benefit of the subcontractors, laborers, material suppliers, and those performing services."

Accordingly, the Board, in this case, the School Corporation, is required to withhold the contractor's final payment until the contractor has paid these several persons. See Seaboard, 601 N.E.2d at 357. If a contractor, laborer, material supplier, and service provider desires payment from the Board out of funds retained by the Board, that party must file a claim with the Board within sixty days of the date that entity last performed labor, furnished material, or rendered service. Id. at 359. If payment is not made, or is not made in full, the subcontractor has until sixty days after the last labor or service is performed, or the last item of material furnished by any subcontractor, material provider, service performer, or laborer, to seek payment from the surety by filing duplicate statements of the amount due with the Board, and then must wait thirty days before initiating an action against the surety. Id.

The legislative purpose of the statute is to secure payment of contractors, laborers, material suppliers, and those who perform services for public work projects. Ind. Carpenters Cent., 601 N.E.2d at 357-58. The statute mandates this relief because mechanic's liens are not available to a claimant who works on public work projects. Id. Importantly for this case, the statute is "liberally construed regarding the classes of

6

laborers, materialmen, and suppliers covered." Dow-Par, Inc. v. Lee Corp., 644 N.E.2d 150, 153 (Ind. Ct. App. 1994).

Fidelity argues that the Union is not eligible to make a claim under the payment bond because it "is at best a contractor to a sub subcontract" and that "I.C. 36-1-12-13.1 and the payment bond expressly limits eligible claimants to those 'having a direct contract with the Principal or with a Subcontractor of the Principal.'" Appellant's Br. at 6 (quoting Appellant's App. p. 15). It claims that the statute's "restrictive scheme" requires that an eligible claimant be a "contractor, subcontractor, or their successors and assigns." Appellant's Br. at 8. Fidelity asserts that since the Union does not have a "direct contract with either the Principal/Contractor, Bruns-Gutzwiller, or with a Subcontractor of the Principal/Contractor, ProClad," it cannot make a claim under the payment bond. Id.

In support of its claim, Fidelity cites State ex rel. Lawson v. Warren Bros. Roads Co., 115 Ind. App. 452, 59 N.E.2d 912 (1945), in which this court held that a vendor who delivered materials to a public works construction worksite was not entitled to make a claim under the payment bond. Fidelity also cites Dow-Par, Inc. v. Lee Corp., in which another panel of this court held that a vendor leasing equipment to a subcontractor was a "lessor," not a "supplier," of equipment, and, thus, was not eligible to make a claim under the payment bond. 644 N.E.2d at 153.

The facts of the present case, however, are distinguishable from those in both cases cited by Fidelity. Here, the Union seeks to recover unpaid compensation for labor and services performed, rather than for materials as in Lawson and Dow-Par. This

7

distinction is important. In <u>Lawson</u>, this court indicated that it would have reached a different result had the claim been one for unpaid labor. See <u>Lawson</u>, 115 Ind. App. at 463, 59 N.E.2d at 916 (noting that appellant claimed in his appeal, but not in his complaint, that "after he had hauled the stone to the road site in discharge of his employment with the materialman he spread it upon the roadbed at the special instance and request of the appellee" and further observing, "[i]f that were the theory of his complaint and if he were seeking to recover for such services alone, either upon a quantum meruit basis or an agreed sum, clearly he would be entitled to the relief sought. But we cannot so construe the complaint." Furthermore, in <u>MacDonald v. Calumet Supply Co.</u>, 215 Ind. 536, 543-44, 19 N.E.2d 567, 570 (1939), the court said:

> It becomes immediately apparent that the purpose of the law is not, as the appellees contend, 'to protect persons who have furnished materials to the general contractor,' but to secure 'the payment of subcontractors, labor, materialmen and those performing any service in relation to or in connection with said construction, erection, alteration or repair[.]

Under the plain language of Indiana Code section 36-1-12-13.1, "[t]he payment bond is binding on the contractor, the subcontractor, and their successors and assigns for the payment of all indebtedness to a person for labor and service performed, material furnished, or services rendered." It is clear, then, that the statute does not limit the pool of eligible claimants to contractors, subcontractors, and their successors and assigns, as Fidelity claims. Rather, it is these entities on whom the payment bond is binding. The statute's language with respect to eligible claimants, as the trial court correctly noted, is broad. Contractors, subcontractors, their successors and assigns are bound, through the payment bond, for payment of "all indebtedness to a person for labor and service

8

performed, material furnished or services rendered." Ind. Code § 36-1-12-13.1(a)(2). Subsection (c) of the statute broadly defines a claimant as a "person to whom money is due for labor performed, material furnished, or services provided." Ind. Code § 36-1-12-13.1(c).

In Indiana Carpenters Central & Western Indiana Pension Fund v. Seaboard Surety Co., this court held that a pension and benefit plan had standing to file a claim against a public works payment bond for unpaid fringe benefits owed to the plan's members for work performed on a public works project, since the plan stood in a trustee relationship with the laborers. 601 N.E.2d 352, 359 (Ind. Ct. App. 1992). Fidelity claims that Seaboard supports Fidelity's contention that "a direct contract relationship must exist with either the contractor or subcontractor to be an eligible claimant." Appellant's Br. at 7. We disagree. In Seaboard, this court noted the existence of a contractual relationship between the plan and the subcontractor, but, importantly for this case, it did not limit bond claimants to those who have direct contracts with either a first-tier contractor or a second-tier subcontractor. Instead, this court focused on the policy of the statute, which is to provide protection for a group of employees who perform labor for a public works project and who are unable to file a mechanics lien to recover unpaid compensation for that labor. See id. at 356; see also ModuForm, Inc. v. Harry H. Verkler Contractor, Inc., 681 N.E.2d 243, 248 (Ind. Ct. App. 1997) (allowing a declaration of final completion to occur before the project is actually finished would "circumvent the purpose of the statute which is to secure payment for those who provide materials and labor to public work projects").

We again note that Indiana's payment bond statute is "liberally construed regarding the classes of laborers, materialmen, and suppliers covered." Dow-Par, Inc., 644 N.E.2d at 153. See also Fry v. P. Bannon Sewer Pipe Co., 179 Ind. 309, 101 N.E. 10, 13 (1913) ("within [a surety's] undertaking a liberal interpretation is indulged in favor of the materialman and laborer."). The trial court's entry of summary judgment in favor of the Union is consistent with the overall policy behind the public works payment bond statute, as well as the liberal construction of the statute. Fidelity's theory, on the other hand, is contrary to the purpose of the public works payment bond statute, since it would leave laborers who performed services for a public works project without compensation and without recourse. Therefore, we conclude that the Union is an eligible claimant under the payment bond and applicable statutes and that its claims for unpaid fringe benefits and unremitted wages are covered by the payment bond. We further agree with the trial court that, to the extent that the language of the payment bond might be interpreted to limit claimant eligibility to first-tier contractors and second-tier subcontractors, the payment bond is in violation of Indiana statute.

## Conclusion

For all of these reasons, we conclude that the Union may properly make claims for payment of unpaid fringe benefit contributions and remitted wages for Union dues under the public works payment bond and, therefore, the trial court did not err in granting summary judgment in favor of the Union.

Affirmed.

BRADFORD, J., and PYLE, J., concur.